(*) SAMPSON *versus* BOWDOINHAM STEAM MILL CORPORATION.

From the performance of certain corporate acts by persons designated in a charter of incorporation, the existence of the corporation may be inferred, without record evidence of its first meeting or of its acceptance of the charter.

From what corporate acts such an inference may be deduced.

When by a by-law of the corporation, its officers are to hold office *for a year*, and until others are chosen in their room, *it seems* unnecessary, in the warrant calling the annual meeting, to insert "*that officers are to be chosen;*" although another of the by-laws prescribes that such warrant shall "specify the business to be transacted."

When the prescribed officers are elected without such specification in the warrant, and the corporation, by its acts, recognize the existence and authority of such officers, the election will be deemed valid.

The by-laws of a corporation authorized its directors to manage all its prudential concerns, and the directors, by a document signed by them in that capacity, certified that the plaintiff had previously advanced a specified sum for the corporation, which sum with its interest, was still due to him; *Held*, that upon such certificate an action may be maintained against the corporation.

Such certificate is to have full effect as the foundation of a suit, notwithstanding the existence of a by-law, prescribing that the directors shall hold stated meetings and keep a record of their votes and doings.

Such a by-law is merely directory, and does not impair the rights of others.

ON REPORT from *Nisi Prius*, RICE, J., presiding.

ASSUMPSIT, based upon an instrument in the following form ; which was read to the jury.

"This is to certify that James Sampson paid in behalf of the Bowdoinham Steam Mill Corporation, the sum of six hundred and seventy-five dollars on the sixteenth day of Sep-

tember, A. D. 1845, which sum is now due to him, with interest from that date. $675. February 26, 1847.

> " Nathaniel Purington, ⎫ Directors of the
> " Wm. Purington, ⎪ Bowdoinham
> " Wm. Lunt, ⎬ Steam Mill Cor."
> " Wm. Higgins, ⎭

The reading of that instrument was objected to by the defendants, who alleged that its signers were never legally directors of the Corporation.

The plaintiff offered in evidence the Act incorporating the Bowdoinham Steam Mill Corporation, passed March 25, 1837, and also a book proved to be the book of records of the Corporation, and containing its by-laws.

The defendants objected to the introduction of the records and of the by-laws.

A witness, who appeared by the records to be the clerk of the Corporation, testified, (under objection made by the plaintiff,) *that* the defendants sold the steam mill and property in 1837 or 1838 ; *that* they had had no property since ; *that* he did not know that they, as a Corporation, had since done any acts ; and *that* he had since that sale had no knowledge of their pecuniary condition.

The record showed the sale to have been in 1845.

The plaintiff was always a member of the Corporation.

Joseph W. Russell, Esq. testified, (under objections made by the defendants,) that in 1847 and 1848, he was employed by the signers of the above certificate, claiming to act as Directors, to defend an action against the Corporation.

The case was then submitted.

The full Court are to consider the foregoing testimony, so far as it is admissible, either party being at liberty to put in the book of records or any part of it, so far as the same may be legal testimony. If upon the facts thus presented the action can be maintained a default is to be entered.

So far as the records and by-laws became material in the estimation of the Court, they are sufficiently presented in the opinion.

---

---

*Russell*, for the plaintiff.

*Gould*, for the defendants.

1. The instrument offered by the plaintiff is not a promissory note, or an obligation to pay. It is simply a "certificate" or written admission of the fact that the plaintiff paid that sum for the Corporation on September 16, 1845.

Corporations are not bound by the admissions of Directors or stockholders.

Angel & Ames on Corp. (2d edition,) p. 249, and authorities cited in note (b.); Ib. 168.

It was offered simply as *evidence* of a *prior* indebtedness, and the *only* evidence.

2. But if regarded as a *contract,* upon which an action can be maintained, it is not binding upon the Corporation, because it was not executed by a *majority* of the *Directors legally elected.* Angel & Ames on Cor. (2d ed.) p. 231.

No meeting of the Corporation was ever legally called, for the choice of Directors, after the *first*, and *quere* as to that.

Art. 7 of the by-laws, provides, that the *notices* calling all meetings of the Corporation "shall specify *the business to be transacted at said meetings.*"

No meeting for the choice of Directors was ever thus called.

The board of Directors consisted of *five* persons. Only *two* of those chosen at the *first meeting* signed the paper in question. The other two persons, who signed it, were never elected Directors, at a meeting *adjourned* from that first called, but purport to have been elected at a meeting adjourned from a *new,* but *illegal* call.

An *adjourned* meeting could have no power to act upon other matters than those for which it was *originally called.*

The by-laws do not provide for the *adjournment* of meetings from year to year, but article 7 provides that "the meetings of the Corporation shall be called by the clerk, &c., by posting up notices which shall specify the business to be transacted at said meeting;" thus giving the members an *opportunity* to attend at the choice of Directors.

Sampson *v.* Bowdoinham Steam Mill Corporation.

The book purporting to be a book of records, and the record of the election of those persons signing the certificate, were therefore *inadmissible.*

3. The Directors of this Corporation had no *authority* to execute a contract, of the *character* claimed for this instrument or writing; it is not among their *enumerated* powers in Art. 5 of the by-laws. It would seem more appropriately to be within the province of the treasurer. By-laws, Art. 4.

4. The power to make a contract *(if they possessed it,)* was exercised in an *illegal manner;* their board could act only by *vote.* Art. 5 of by-laws; Angel & Ames on Corp. (2d ed.) p. 176.

5. A *single* act only, is produced, to show that the persons claimed to be Directors were such *de facto.* This is not sufficient. But the acts of officers *de facto* are only binding on the Corporation as respects *third persons.* The plaintiff is a *member* and an *officer* of the Corporation, if they have any. He was elected a *Director* at the first meeting.

6. This action is brought to recover the amount of a debt of the Corporation paid by *one of its members.* The remedy is against other stockholders for *a contribution.* R. S. c. 76, § 22.

SHEPLEY, C. J. — The legal existence of a Corporation capable of performing corporate acts, may be inferred from the grant of its charter, and that the persons named in it, or they and others associated with them, have held meetings, chosen officers, adopted by-laws, and performed other corporate acts, without a production of a legal record of the first meeting, or a formal acceptance of the charter. *Trott* v. *Warren,* 2 Fairf. 227 ; *Penobscot Boom* v. *Lampson,* 16 Maine, 224.

The first meeting of the defendant corporation appears to have been holden on June 19, 1837, when officers were chosen and a committee to draft by-laws. This meeting was continued by several adjournments to January 1, 1838, when the by-laws reported by the first named of that committee. were accepted, and new officers were chosen.

By the first · article · of the by-laws it is provided, that all the officers named shall hold their office for one year and until others are chosen and qualified to act in their stead, unless sooner dismissed.

By the seventh article it is provided, that notice for meetings "shall specify the business to be transacted at said meetings."

The corporators appear to have been legally notified by the clerk to meet on May 9, 1843. The meeting then organized, was continued by adjournments to Jan'y 1, 1844, when a vote was passed to elect the officers of the Corporation; and they were accordingly chosen; and among them were five Directors. This meeting was continued by adjournment to Jan'y 6, 1845, when five directors and other officers were again chosen. At this meeting a vote was passed authorizing and requesting these Directors to sell the steam mill at public or private sale, and to leave the logs and other property of the corporation at their disposal.

The plaintiff and four other persons were then chosen Directors. No Directors have since been chosen. The four other persons then chosen Directors, on Feb. 26, 1847, made and subscribed the paper, upon which this suit has been commenced, stating that the plaintiff paid in behalf of the Corporation $675, on Sept. 16, 1845, " which sum is now due to him with interest from that date."

1. It is insisted in defence, that they were not legally chosen, because there was no specification in the notice for calling the meeting of any such business to be transacted as the choice of officers.

The first article of the by-laws had prescribed the business to be transacted once a year, at an annual meeting, to be the choice of officers. That business would be presented at each annual meeting by the by-laws presumed to be known to each member of the Corporation. It could not be considered as business transacted without notice. In no instance does there ·appear to have been a statement in the notice for calling a meeting, that it was called for the choice of officers. Yet the

clerk, treasurer and directors chosen, have been constantly re-
cognized in the records, and in meetings legally called for the
transaction of other business, as officers of the Corporation.
The construction uniformly put by the Corporation upon that
provision of its by-laws, appears to have been, that it had re-
ference to other business than the choice of officers. It ap-
pears, that at a legal meeting called, after those Directors were
chosen, to meet on May 29, 1845, a vote was passed " that
" the Directors be authorized *to* receive Gen. Joseph Ber-
ry's notes in lieu of William Lunt's." This was in payment
for the steam mill, which appears to have been sold by vote
of the Corporation. It could refer to no other persons than
those chosen and existing as such by its own records; and it
recognized them as its Directors. It cannot now, under such
circumstances, be permitted, against its creditors, to assert that
it had no Directors capable of transacting business. If it
were permitted to do so, it might repudiate and annul all the
business transactions, including the purchase and sale of its
real and personal property, conducted through its Treasurer
and Directors, or agents by them appointed.

2. It is insisted, that the paper made on February 26, 1847,
is a mere admission of the fact of a past payment made by
the plaintiff, and that the Corporation is not bound by the ad-
mission of its Directors respecting a past transaction.

It does not appear to be the admission of a past transaction
without the performance of any act respecting it at the time.
On the contrary, a due-bill appears to have been given to the
plaintiff, stating the amount then presently due to him, and
the time when he became a creditor appears to have been
named for the purpose of giving him a claim for interest from
that date.

3. It is further insisted, that the Directors by the by-laws
were not authorized to make the contract, except in a meeting
and by vote recorded.

The fifth article of the by-laws provides " it shall be the
duty of the board of Directors to manage all the prudential
concerns of the Corporation ; give orders and directions for

the transaction of all the business of the Corporation." This is sufficiently extensive to authorize them to adjust all claims presented, and to find whether any and what sums were due from the Corporation. That article of the by-laws also provides, that "they shall hold stated meetings and keep a fair record of all their doings, votes and directions." The authority is not conferred upon them only when they thus meet and act. The provision is directory to them and does not affect the rights of others.

The debt due to the plaintiff does not appear to be of the character provided for by the statute c. 76, § 22.

*Defendant defaulted.*

HOWARD, RICE and HATHAWAY, J. J., concurred.