No. 96.—DANIEL R. MITCHELL, plaintiff in error, *vs.* THE ROME RAIL ROAD COMPANY, defendant.

[1.] A paper in the following words is, *prima facie,* a good promissory note, viz :                                  "ROME, SEPTEMBER 10TH, 1846.
$500.   Due the Memphis Branch Rail Road and Steamboat Company of Georgia Five Hundred Dollars payable on demand. D. R. MITCHELL."

[2.] A non-suit is not to be granted when the plaintiff has made out a *prima facie* case.

[3.] The sayings of a stockholder do not bind the corporation.

[4.] A new trial ought not to be granted by *this* Court, solely on the ground of the admission of evidence which is irrelevant.

[5.] A stockholder in a corporation, the stock of whom has been forfeited, is

not relieved from the payment of a note given by him for stock, although there may, *after* the time when his stock was forfeited, have been made a material alteration in the charter without his assent.

[6.] The fourth section of the Act to incorporate the Memphis Branch Rail Road & Steamboat Company of Georgia being in these words: "That the capital stock of said company shall consist of ten thousand shares of Fifty Dollars each, but the number of shares may be increased one third; and upon the subscription for shares in said stock, the subscribers shall pay the sum of Five Dollars upon each share subscribed for by such subscriber: *Provided*, that such company may commence the construction of their rail road and boating so soon as three thousand shall be subscribed:" *Held*, that the payment of Five Dollars a share on the shares at the time of subscription, was not a condition *precedent* to the organization of the company or to the right of the company to begin boating and the construction of the rail road.

[7.] The charter of a corporation authorizes the corporation to "make contracts." The corporation takes a promissory note: *Held*, that *prima facie* the note is to be considered evidence of such a contract as the corporation was authorized to make.

[8.] A Court is not bound to give a charge on a point which is not supported by some evidence.

[9.] Under the aforesaid section of the charter, a subscription is not rendered void by the failure to pay Five Dollars a share on it at the time of the making of it. And therefore a note given to secure the payment, in part, of the subscription, is not void.

Action on note, in Floyd Superior Court. Tried before Judge TRIPPE, December Term, 1854.

The following is the bill of exceptions, which contains the facts of the case:

The suit was brought by the Rome Branch R. R. & Steamboat Company, upon the following note:

"ROME, SEPTEMBER 10th, 1846.

$500.    Due the Memphis Branch Rail Road & Steamboat Company of Georgia, Five Hundred Dollars, payable on demand.        (Signed)        D. R. MITCHELL."

"$250.    Cr. the within note by Two Hundred and Fifty Dollars upon Jos. J. Printup's note.        J. E. PARK, Sec."

Defendant's Counsel objected to reading the same in evidence upon the following, among other grounds:

1st. Because the said Company, by its charter, had no right to enter into a contract of that character.

2d. That they had no right to take or give notes payable on demand.

3d. Because the paper offered in evidence did not express that it was given for value received—which objections were over-ruled by the Court, and the said note admitted in evidence —to which decision and ruling of said Court, admitting the said paper in evidence, Counsel for the defendant excepted.

The plaintiff closed the testimony, and the defendant moved to dismiss the case, upon the ground that the plaintiff had not made out, by the proof, such a case as entitled the said plaintiff to recover; which motion was over-ruled by the Court; to which decision and ruling defendant excepted.

The defendant then introduced the proceedings of a meeting held on the 10th of September, 1846—the minutes and proceedings thereof, which are as follows:

"ROME, SEPTEMBER 10th, 1846.

According to adjournment, the subscribers to the stock of the Memphis Branch Rail Road & Steamboat Company of Georgia met this day at the court-house. Philip C. Guin was called to the Chair and W. T. Trammell requested to act as Secretary. The object of the meeting was explained by Judge King, to be to ascertain the progress made in the subscription of stock, and for the construction, and then to proceed to the organization of the Company. It was determined by the meeting that the conditional subscription to the stock previously made should be laid aside, and that the commissioners appointed to receive subscription should be requested to open a book of subscription in strict accordance with the charter—this was done. The number of shares required by the charter for the organization of the company having been subscribed, the commissioners stated that fact to the meeting; and besides, that the first instalment required to be paid by the charter had been

paid in and was in their possession and ready to be disposed of, as the meeting should direct. The meeting of the subscribers took into consideration the statements placed before it, and on motion, it was unanimously agreed that the meeting of subscribers should resolve itself into a convention of stockholders of the Memphis Branch Rail Road & Steamboat Company of Georgia. It was then moved that the number of directors should be seven, and that as the regular number of shares had been subscribed and the first instalment paid in, agreeably to the provisions of the charter, on motion of Judge King, *Resolved*, That the number of directors of this company consist of seven members, any four of whom, or three besides the president, should constitute a quorum. The motion was agreed to, and the stockholders proceeded to the choice of directors—on counting out the ballots, it appeared that Messrs. Jno. P. King, Daniel Tyler, W. R. Smith, Alfred Shorter, D. R. Mitchell, John E. Park and J. W. M. Berrien had received a large majority of the shares.

These gentlemen were therefore declared to be elected directors of the Memphis Branch Rail Road and Steamboat Company of Georgia for one year from this date. On motion of D. R. Mitchell, Esq. *Resolved,* by the stockholders of the Memphis Branch Rail Road and Steamboat Company of Georgia, that the stockholders shall not be required, by any order of the board of directors, to pay any funds for the purpose of constructing of said road farther west than the town of Rome, without the unanimous consent of the stockholders given at a regular meeting of the same—passed. On motion, the meeting adjourned. P. C. GWIN, Chm'n.
W. T. TRAMMELL, Sec."

At a meeting of the directors on the 27th Sept. 1848, it appearing to the board that Jno. P. King, for Daniel Tyler, subscribed seven hundred and fifty shares to the stock of the company and paid five dollars per share thereon—it farther appearing that said Tyler has not recognized said subscription or

refunded the said advance, it is ordered that said stock be transferred to the individual name of the said King, and the said subscription be taken, deemed and considered the individual subscription of the said King, provided, however, the said King shall return, to be cancelled, the original subscription in the name of said Tyler.

8th NOVEMBER, 1848.

*Resolved,* That the company accept the amendments to the charter, authorized by the Legislature of Georgia, by Act approved 29th Dec. 1847.

12th MARCH, 1850.

*Resolved,* That this convention accept the amendment of the charter of this company, authorized by the Legislature.

The cost of the road was admitted to be One Hundred and Forty Thousand Dollars.

The defendant then offered in evidence an extract from the minutes and proceedings of the company on the 14th day of April, 1846, as follows:

The undersigned, a portion of the original contractors of the Rome & Memphis Branch Rail Road Company of Georgia, having this day met in the town of Rome for the purpose of taking preparatory steps for the permanent organization of said company, have resolved to open books of subscription for the capital stock of said company, the subscription to the stock to be valid and binding on the subscribers for the stock, only on condition that Alfred Shorter, J. W. M. Berrien and William Nesbit sign the relinquishment this day drawn up for their signature, relinquishing all their title, interest and claim in and to the said charter, and on condition that the requisite amount of stock be subscribed to authorize a legal and permanent organization of the said company; and on the further condition, that the subscribers for stock be permitted to pay their instalments in work upon the road in grading, bridging,

getting timber, &c. for superstructure at cash prices; and should the Ga. Rail Road Company and Macon & Western Rail Road Co. or other rail road companies be subscribers for stock, that the said company be allowed to pay the instalments that may become due on their stock subscribed, in iron, gudgeons, cars, &c. of good and substantial quality—the value of the same to be determined by competent and disinterested judges, at cash rates, except such an amount of cash as may be necessary to pay the salaries of engineers and agents and for the right of way, which is to be advanced by said company, until the road is put in operation.   And should the subscribers for stock and the said rail road companies fail to pay in work as above, and in iron, &c. as above, when required, legally, by the directors hereafter to be appointed for the management of the said Rome & Memphis Branch Rail Road Co. then they will respectively be required to pay their subscription in cash, or instalments thereon as the same may be ordered and required by the board of directors.

Signed,          D. R. MITCHELL,  ⎫
                 EDWARD WARE,      ⎬ Corporators.
                 JOSEPH WATERS,    ⎪
                 JOHN SMITH,       ⎭

At a meeting of directors 7th April, 1847, the following resolution was passed:

*Resolved,* That the company adopt a good second hand rail road iron, not less than $2\frac{1}{2}$ by $\frac{3}{8}$ of an inch thick, at $60 per ton, delivered at Kingston, as was proposed by Col. King, subject to the inspection of the Chief Engineer.

At a meeting 28th April, 1847—

*Resolved,* That the President of the Memphis Branch Rail Road & Steamboat Co. of Ga. be authorized to receive from Reuben Herndon his certificate of stock and deliver to him his ten per cent. note—1st. Because his subscription is worthless and never will be complied with.   2d. Because it is deemed

material to have said Herndon's testimony in the appeal case of Benjamin Reynolds *vs.* the Company, to be tried on Friday next.

The defendant then offered to prove by N. Yarbrough and A. T. Hardin, that the subscription of Daniel R. Mitchell was made upon the express condition that the depot was to be located in the upper end of the City of Rome, near where the Presbyterian Church now stands, near to some property in which he, Mitchell, was interested, and this was stated publicly in a meeting, by John P. King, a large stockholder and principal mover in organizing the said company, and that King stated in the meeting, and pledged himself, that all the road cost over $70,000 he, King, would pay; which being objected to by the plaintiff, was rejected by the Court. Defendant excepted.

The following is the testimony for the defendant:

*W. T. Trammell* sworn, says: That he acted as secretary at the meeting 10th Sept. 1846; that there was no money paid or offered to be paid, he saw or heard of.

*Nathan Yarbrough* sworn, testified: That he was present at the first and second meetings of the company, and no money was paid or offered to be paid; that the paper in evidence, upon which the suit was instituted, was given in place of payment in cash of the first instalment for stock; that he had no recollection that any certificate of stock was ever given to the defendant; that the removal of the depot, or the location at the fork of the river instead of the place near the Presbyterian Church, depreciated property in the upper part of Rome, where Mitchell was interested, fifty per cent.; that those who applied for certificates of stock obtained them and gave their notes; have no recollection of the defendant getting any certificate.

*A. T. Hardin* testified: That he was present at the meetings organizing the Company; that no money was paid or offered to be paid; that this note and others were given for stock.

SEPT. 11, 1846.

Present—Directors John P. King, A. Shorter, D. R. Mitchell and J. W. M. Berrien.

*Resolved*, That the stockholders of this company having paid Five Dollars per share upon the subscription for their stock, according to the terms of their charter, and the said company having no immediate use for the money, it is *Resolved*, That the same be loaned out to the stockholders who may desire it, in proportion to their subscription, and upon their notes to the company, payable on demand.

The minutes show that half of Mitchell's stock was transferred to Printup (Jos. J. Printup).

The defendant then read in evidence the Act of the Legislature, passed in 1839, entitled an Act to incorporate the Memphis Branch Rail Road & Steamboat Company of Georgia; also an Act passed in 1845, amendatory thereof; and also an Act passed in 1850, to incorporate The Coosa River Steamboat Company; and also an Act of 1850, to amend the charter and change the corporate name of the Memphis Branch Rail Road & Steamboat Company of Georgia. It is admitted that the stock of the defendant had been forfeited before the passage of the two last named Acts.

The plaintiff, in rebuttal, introduced *Sterling T. Combs*, who testified: He was present at the meetings organizing the company; that Judge King offered to loan the money to all who did not have it, to pay the five per cent.; that King did loan witness money; whether he loaned any body else money or not, he did not know; there was a sealed package which King laid down and took up again, which he supposed, or understood, contained money, but does not know; and also, that the reason for the indulgement, his taking notes instead of the money, was in order that the stockholders might work out the stock at cash prices.

*Joseph J. Printup* testified: That the credit of $250 on the

note sued on, was put there by the assent and direction of Mitchell.

Extract from minutes of Board, 4th November, 1846:

On motion of Col. Mitchell, that the Board organize and proceed to business, when the subject of prices for grading was fully discussed.

John P. King submitted a list of prices and moved their adoption. D. R. Mitchell offered an amendment, by striking out 8 cents per yard for grading and inserting 10; and striking out 12½ cents for cross-ties and inserting 15 cents, which was lost.

Defendant's Counsel objected to the introduction of this evidence by the plaintiff, on the ground that they had no right to introduce their minutes in evidence for themselves; which objection was over-ruled by the Court and the evidence read to the Jury. To which decision and ruling of the Court defendant excepts, and alleges the same to be error.

Exhibit from one of the plaintiff's small books, said exhibit having no date:

Subscribers to the Memphis Branch Rail Road & Steamboat Company of Georgia:

We, the subscribers, hereby subscribe the number of shares opposite to our names, in the Memphis Branch Rail Road & Steamboat Company, and promise to comply with the provisions of the charter.

| | |
|---|---|
| Alfred Shorter, Four Hundred Shares. | 400 |
| John P. King, Seven Hundred and Fifty. | 750 |
| D. Tyler, per King, Seven Hundred and Fifty. | 750 |
| D. R. Mitchell, One Hundred. | 100 |

And others.

The above was introduced by defendant.

Counsel for the defendant, among other things, asked the

Court to charge the Jury, that any material or essential alteration of the charter (original) without the assent of the defendant, relieves him from the payment of this note, which was refused by the Court; to which refusal to charge, Counsel for the defendant then and there excepted, and now in this Court excepts and alleges the same to be error.

Counsel for the defendant also requested the Court to charge the Jury, that the Act of 1850, entitled an Act to incorporate the Coosa River Steamboat Co. and the rights thereby conferred upon the corporation therein mentioned, was such an essential and material alteration as will relieve the defendant; which charge the Court refused to give; to which refusal to charge, Counsel for defendant then and there excepted, and now in this Court excepts, and alleges the same to be error. Counsel for the defendant also asked the Court to charge the Jury, that the Act of 1850, amending the charter and changing the name of the (same) Memphis Branch Rail Road & Steamboat Company of Georgia, thereby in effect yielding up all the right the said corporation had in the navigation of the Coosa river, was such an alteration as will relieve the defendant, unless it was made with his assent; which charge the Court refused to make; to which refusal to charge Counsel for the defendant then and there excepted, and now in this Court excepts, and alleges the same to be error. Counsel for the defendant also asked the Court to charge the Jury, that the plaintiff had no power, under this charter, either to give or take notes payable on demand, unless it is expressly given, and that no such power is to be found in the charter; which charge was given with the addition, "unless in the prosecution of the business of the corporation;" to which charge thus given, or the addition to the request, Counsel for the defendant then and there excepted, and now in this Court excepts, and alleges the same to be error.

Counsel for the defendant also asked the Court to charge the Jury, if the Jury believe from the evidence, that the amount required to be paid in before the organization of the Company was not paid in, the organization was not legal, and

the acts done under such organizations are not binding; which the Court refused to do, and charged, that if defendant participated in said .organization, and also acted as a director for some time, he cannot now object—the defendant excepted.

Counsel for the defendant also asked the Court to charge the Jury, that the giving or taking a note payable on demand for money loaned, is not within the scope of the design or authority of the corporation, the plaintiffs in the action, which the Court gave, with the qualification—1st. Was this note for the purpose of the corporation? The presumption of the law is in favor of the note—has the defendant proved that it was given for purposes foreign to the object of the Corporation? To which refusal to charge as requested, in the language requested, and the qualification thereof, the defendant excepted.

Counsel for the defendant also asked the Court to charge the Jury, that if the Jury believe the note was given for loaned money, it is void; which charge the Court gave with the following qualification: "If the note sued on was given by Mitchell and accepted by the company, in lieu of and instead of money, as a payment for stock, and Mitchell was present assenting thereto, and acting for some time thereafter as one of the directors, he was bound to pay said note, and cannot now object to the payment thereof." To which refusal to charge, in the language and as requested, and to the qualification thereof, defendant excepted.

Counsel for the defendant also requested the Court to charge the Jury, that if the note is to be received as a subscription for stock, then the material alteration in the charter alluded to in the former request to charge, will discharge the defendant, unless his assent to the alteration is proven; which charge the Court refused to give; to which refusal to charge the defendant excepted.

Counsel for the defendant also requested the Court to charge the Jury, that the Act of 1850 before mentioned, (changing name, &c.) is a material alteration of the charter, and such an one as will discharge the defendant from his subscription for

stock; which charge the Court refused to give; to which re¦ fusal to charge the defendant excepted.

The Jury returned a verdict for the plaintiff for $250, with interest and cost of suit.

ALEXANDER & UNDERWOOD, for plaintiff in error.

PRINTUP, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The first assignment of error is, that the Court below permitted the "paper or note described in the declaration" to be read as evidence to the Jury.

That paper or note is in the following words:

"ROME, SEPTEMBER 10th, 1846.
$500:. Due the Memphis Branch Rail Road & Steamboat Company of Georgia, Five Hundred Dollars, payable on de- ,mand.                          D. R. MITCHELL."

The objections made to the admission of this paper in evidence, may be resolved into two.   1. That the charter did not authorize the company to take such a note.   2. That if the charter did this, the note, itself, was not expressed to be on consideration.

The charter contains this section : "That the company aforesaid, shall be deemed a common carrier, as respects all goods, wares, merchandise and produce entrusted to them for transportation, and shall have full power and authority to do and perform all and every corporate acts as are permitted or allowed to other companies incorporated for similar purposes." (*Acts of* 1845, 109.)

Among "other companies incorporated for similar purposes," may, no doubt, be included the Central Rail Road & Banking

Company of Georgia, and the Macon and Western Rail Road Company. And these companies, by their charters, have the general power to "make contracts." (*Pr. Dig.* 300, 326, 314. *Pamph. Acts* 1847, 181.)

A promissory note is a contract.

These companies, therefore, have power, respectively, to be a party to a promissory note.

And so, therefore, was the company that is the defendant in error in this case.

The first objection, then, to the admission of the note was not a good one.

Neither was the second. This was a promissory note, although no consideration was mentioned in it. (*Waithman vs. Elsee,* 1 *Carr. & Kerw.* 35. *Curtis vs. Rickards,* 1 *Mann. & Granger,* 46. *Story's Prom. Notes,* §§14, 181. *Chitty on Bills,* 79.)

[1.] The Court below was right, therefore, in admitting the note to the Jury.

[2.] And if right in that, the Court was also of course right, in over-ruling the motion to dismiss the case, on the alleged ground of a want of evidence to support the case. The note was, *prima facie,* sufficient to support the plaintiff's case.

For aught that appears, the statements of John P. King were not authorized by the company; if not, they were not binding on the company. Therefore, it was right in the Court below not to let his statements go to the Jury as evidence against the company.

[3.] The sayings of a stockholder do not bind the corporation.

[4.] The extract from the minutes of the corporation which the Court below admitted to the Jury as evidence, was merely irrelevant. And though irrelevant evidence is illegal evidence; yet, a new trial ought not to be granted solely on the ground of the admission of such evidence. In such a case, the presumption, at least *prima facie* is, that the evidence, as it cannot legally, so it does not actually, influence the Jury, in the formation of their verdict.

In this case, there appears nothing to rebut this presumption.

Therefore, the fourth assignment of error is not a good one.

Had a motion been made in the Court below for a new trial, on this ground, the decision of this Court would, under the New Trial Act of 1853–'4, have had to be different.

The next assignment of error is, that the Court below erred in refusing to charge the Jury, that any material or essential alteration of the original charter, without the assent of the defendant, (Mitchell,) relieved him from the payment of the note.

Before the alterations referred to had been made, the stock of the plaintiff in error, Mitchell, had been forfeited to the company, and he had therefore, ceased to be a stockholder in the company.

It appears, from the evidence of Yarbrough and Hardin, that this note had been given by Mitchell, "in place of payment in cash, of the first instalment for stock."

Still, as Mitchell had ceased to be a stockholder in the company, at the time when the alterations in its charter were made, his assent or dissent to those alterations was a matter of no consequence. Assent or dissent to them was a matter solely for the persons who, at the time of the alterations, were the stockholders.

[5.] This being so, the liability of Mitchell to pay the note would not at all be affected by the alteration in the charter. The note stood in the place of so much cash paid in. And by the alteration in the charter, Mitchell no more got the right to be exempted from liability to pay the note than he would if, instead of giving a note, he had paid the money, have got the right to have back the money.

This assignment of error is therefore not well founded.

For the same reasons, neither are the next two assignments.

The next assignment of error, after those two, is the refusal of the Court to charge the Jury, without qualification, that the company had no power, under their charter, either to give or to take notes payable on demand. The Court gave this charge

with the qualification, " unless in the prosecution of the business of the corporation."

We have already, in considering the first assignment of error, seen that the company had the general power to " make contracts." And the conclusion we draw from that was, that the company had the right to be a party to a promissory note, because that is a contract.

In addition to what was said on that assignment, it may be said here, that the sixth section of the charter impliedly confers on the company the power " to give" promissory notes. That section has in it these words : " and the evidences of debt of said company shall be binding only on the funds of said company, when signed by the President and attested by the Secretary and Treasurer."

The Court below, then, might well have refused to give this charge, even with a qualification.

The next assignment of error is, that the Court refused to charge, that if " the amount required to be paid in before the organization, was not paid in, the organization was not legal, and the acts done under such organization are not binding"— and instead, charged, " that if defendant participated in said organization and acted as a director for some time," he could not then object to the organization.

The words of the charter which seem to bear upon this point, are the following : " *Sec.* 4. *And be it further enacted by the authority aforesaid*, that the capital stock of said company shall consist of ten thousand shares of fifty dollars each ; but the number of shares may be increased one third ; and upon the subscription for shares in said stock, the subscribers shall pay the sum of five dollars upon each share subscribed for by such subscriber : *Provided*, that said company may commence the construction of their rail road and boating, so soon as three thousand shall be subscribed."

The payment of the five dollars on each share, at the time of subscription, is not, by this section, made a condition *precedent*, either to the existence of the company as a corporation, or to its right, as a corporation, to commence business. In-

deed, the first section of the Act had expressly made the company a corporation.   And the proviso in this section authorizes it to commence boating and the construction of the road, as soon as three thousand shares should be *subscribed*.   According to the proviso, the company did not have to wait, not only until it had got three thousand shares subscribed, but also until it had received five dollars on each of the three thousand shares, before it could begin business.

And if these things be so, the payment of five dollars a share on the subscriptions, at the time of the subscriptions, was not a condition *precedent* to the organization of the company as a corporation.   And for *this* reason, the Court below would have been justified in its refusal to give the charge.   Doubtless, if this payment were a condition precedent to organization, the acts done by the company, unless this condition had been complied with, would be void; and void, notwithstanding any subscriber might have participated in them and given them his sanction; or might have taken part in any pretended organization, and even have become a director under a pretended organization. To this effect is the decision of this Court in *Napier et al. vs. Poe et al.* (12 *Ga. R.* 184,) a case, in which the payment in of a certain per cent. by the subscribers for stock, was a condition precedent to organization or to the right to do business.

But although we cannot sanction the reason given by the Court for its refusal to make this charge, we have to sanction the refusal itself, because that, it appears to us, was right, for the reason which we have given—the reason, that the payment of the five dollars was not a condition precedent to organization.

The next assignment of error, is the refusal of the Court to charge, unqualifiedly, "that the giving or taking a note, payable on demand, for money loaned, is not within the scope of the design or the authority of the corporation, the plaintiff in the action."   The Court qualified this by adding to it, that the presumption of law was in favor of the notes having been given for the purposes and objects of the corporation, i. e. as we understand, the addition—in favor of the notes having been given

as a means to accomplish some of the authorized ends of the corporation.

And we think the Court was right in making this addition to the charge.

[7.] The charter, as we have again and again seen, authorizes the corporation, in general terms, to " make contracts." Therefore, contracts made by it which, like promissory notes, do not, on their face, disclose the objects for which they were made, are, it is to be presumed, until the contrary be shown, such as the charter authorizes it to make.   No person, whether artificial or natural, is to be held to be a law-breaker, without some proof to show that he is one.

The next assignment of error, is the refusal of the Court to charge, unqualifiedly, that if " the note was given for loaned money, it is void."

[8.] This charge the Court, we think, was warranted in not giving, by the absence of evidence on which the charge might stand.   There was no evidence that the note was given for "loaned money."   The resolution authorizing the money paid in for stock to be loaned back to the stockholders, was passed the day *after* the date of this note.

Besides, there is the positive testimony of two witnesses, Yarbrough and Hardin, that the note was given for *stock*.

Instead of making this charge, the Court charged, that if the note was given as a payment for stock, and Mitchell " was present, assenting thereto, and acted, for sometime thereafter, as one of the directors, he is bound to pay the note."

[9.] The fourth section of the charter does not say that subscriptions on which, at the time of subscription, five dollars a share shall not have been paid, shall be void.   On the contrary, it says what is equivalent to saying, that even in that case, they shall not be void; for it says that the company may begin boating and the construction of the rail road as soon as three thousand shares shall have been *subscribed*.   It must therefore consider subscriptions *good*, whether five dollars a share has been paid on them or not.   If so, it follows that the company have the right to collect such subscriptions; and if they

have the right to collect them, they have, as an incident, the right to give terms on which the subscribers may pay them; or, at least, they have the right to *secure* their collection by taking promissory notes for their payment. If the subscription is good, the note is good—for the note is only to secure the subscription.

Suppose, after subscribing, a subscriber *refuses* to pay the five dollars a share? Is the company powerless? Is the company to lose the subscription? Cannot the company enforce the subscription? Wherefore is it, that the company can enforce subsequent instalments of stock, if it cannot enforce the first one?

And there is not the same reason why the payment of the stock, or some part of it, in a rail road corporation, should be made a condition precedent to the corporation's going into operation, that there is why the payment of the stock, or some part of it, in a banking corporation, should be made a condition precedent to such a corporation's going into operation. If a corporation of the latter sort fails, the public suffers—if one of the former sort, only the stockholders. This, at least, is generally true.

The last two assignments of error are, with respect to the effect of the alteration of the charter on Mitchell's liability. The effect of the alteration on that, has already been considered.

Upon the whole, we think there should be a general affirmance of the decisions of the Court below.