## GARMANY *v.* LAWTON.

1. As a general rule, directors can give a valid authorization of the making of a mortgage on the property of the corporation only when acting and consulting together as a board duly assembled. But where all of the shareholders of the corporation by their direct act or acquiescence invest the executive officer of the company with the powers and functions of the board of directors, as a continuous and permanent arrangement, there being no board of directors, or, if directors, they being entirely inactive, and the officer discharging all its duties, a mortgage on the personal property of the corporation, made and executed in its behalf by such officer, to secure one who indorsed a note in order to secure a loan for it and who had to pay such loan, is valid as against the corporation, or a creditor claiming to have obtained a lien by virtue of the issuance and levy of a distress warrant after record of the mortgage, and with knowledge of it, for rent accruing long after the making of the mortgage, although it may not have been authorized by any formal vote of the shareholders or directors.

2. There was sufficient evidence that no minute-books or stock-books were kept by the corporation, or, if any were kept, that they were lost, to authorize the admission of parol evidence in regard to the transactions of the company.

3. Where a mortgage was given to secure a note, and it was provided in the instrument that the payee of the note had agreed "to renew" it from time to time, it was admissible to show that a note bearing a later date was a renewal of that first given.

4. Immaterial errors will not require a reversal.

5. Where an equitable petition was filed for the purpose of having a receiver appointed to administer certain property, and a person holding a chattel mortgage on it was made a party, and it was sought to enjoin

him from proceeding to levy on the property and bring it to sale; and where, instead of objecting to a receivership, the mortgage creditor filed an application and obtained an order for the receiver to sell the property and bring the fund into court, preserving the rights of any lienholders in respect thereto, and afterwards filed an answer and intervention in which it was alleged that the amount for which the mortgaged property sold at the receiver's sale was less than the indebtedness due him, and praying that such amount be paid to him, claiming that he was entitled to share pro rata on this indebtedness with the other creditors in the amount received from other sources, he thus recognized the necessity for the receivership and sought to share in the benefits arising therefrom, and became liable for a pro rata share of the cost and expenses of the litigation.

Argued November 14, 1905.—Decided February 19, 1906.

Equitable petition. Before Judge Cann. Chatham superior court. June 30, 1905.

This case was by agreement tried before the presiding judge without a jury. He filed an opinion from which the following summary of facts is taken: "The Savannah District Messenger and Delivery Company was incorporated April 9, 1896, the capital stock being $10,000, with the right to increase the capital stock to an amount not exceeding $50,000, in the discretion of the board of directors. This is the only reference to a board of directors. The charter gives the right to mortgage the property of the corporation at any time. The original incorporators conveyed, by deed, the property and franchises of the corporation to C. H. Medlock and H. S. Jaudon on November 11, 1898. No certificates of stock had been issued at this time. There was never any stock issued to J. B. Floyd. On July 26, 1902, two certificates of stock were issued, one for fifty shares to H. S. Jaudon, the other for fifty shares to C. H. Medlock. Jaudon, Medlock, and L. W. Walker were the directors. Walker never owned any stock. He was a nominal director. Walker moved away from Savannah, and no director was elected to fill his place. In July, 1899, Jaudon moved away from Savannah, and, until the time he sold out to Medlock all his interest in the company, he received reports from a bookkeeper concerning the business done by the company. After negotiating for two or three months, Jaudon agreed to sell out all his interest in the company to C. H. Medlock. The sale was consummated on May 8, 1903. On July 26, 1902, C. H. Medlock, to secure his individual indebtedness to I. D. LaRoche, made a deed, to secure a

debt, to fifty shares of the capital stock of the Savannah District Messenger and Delivery Company. This was an individual transaction, and is not contended to be a corporate liability. On May 2, 1903, C. H. Medlock as superintendent and manager, to secure the payment of a promissory note payable to the Citizens Bank of Savannah, due ninety days after date, for the sum of $1,500, sold [conveyed] to John Lawton all the property, charter and franchises, good will, books, and accounts of the Savannah District Messenger and Delivery Company. This mortgage was signed, 'Savannah District Messenger and Delivery Company, by C. H. Medlock, Superintendent and Manager,' in the presence of three witnesses, one of whom was a notary public. The mortgage was not filed for record until September 26, 1904, and was recorded in the office of the clerk of the superior court of Chatham county on the same day. On September 24, 1904, C. H. Medlock suddenly died. On September 27, 1904, W. B. Stubbs was appointed and qualified as temporary administrator upon Medlock's estate, and conducted the business of the aforesaid corporation until October 6, 1904, when he presented a petition to the judge of the superior court of Chatham county, asking for the appointment of a receiver to preserve and administer the assets of the corporation for the benefit of creditors. The judge signed the order before ten o'clock a. m., October 6, 1904, appointing the receiver and restraining the said LaRoche and Lawton and Horace Rivers, as agent for Janie M. Garmany, their agents and attorneys, and the sheriff and his deputies, from interfering with said corporation, or its assets, in any way whatever, and from levying or attempting to levy any process thereon. Service of this order was acknowledged on October 6, 1904, by Adams & Adams, attorneys for said Lawton, and by Gordon & Elliott as attorneys for said Rivers, as agent. The legal evidence shows: There was no stock-book, there was no stock issued prior to that issued to C. H. Medlock and H. S. Jaudon, there was no minute-book kept, there was no corporate seal, and no record of any corporate action; from the time Jaudon and Medlock purchased the business Medlock conducted, as manager, all the business of the corporation; and this was especially true after Jaudon removed from Savannah, and entirely true after Medlock purchased Jaudon's stock in the corporation. The evidence shows that Rivers, as agent, and his attorneys knew of the contents of the

mortgage to Lawton before he sued out his distress warrant. There is no evidence to show whether the levy of the distress warrant was made before or after the receiver actually took charge."

*Gordon & Elliott,* for plaintiffs in error.

*Adams & Adams,* contra.

LUMPKIN, J. (After stating the foregoing facts.) 1. A corporation is a legal entity, distinguished from any or all of its stockholders. That one person may own a majority or all of the stock of the corporation does not establish an identity between him and it, so as to make acts by him in his individual name its acts and binding on it. *Newton Manufacturing Co.* v. *White,* 42 *Ga.* 148; *Exchange Bank* v. *Macon Construction Co.,* 97 *Ga.* 1; *Sparks* v. *Dunbar,* 102 *Ga.* 129; *Waycross Air-Line R. Co.* v. *Offerman R. Co.,* 109 *Ga.* 827. "When a corporation in a given matter is empowered to act only through its board of directors, or other select body of its officials, individual or separate action of the members of such board is not sufficient. The agent of the corporation is the board itself acting in its organized capacity, and not its members acting independently of its meetings." *Monroe Mercantile Co.* v. *Arnold,* 108 *Ga.* 449; *Branch* v. *Augusta Glass Works,* 95 *Ga.* 573; *England* v. Dearborn, 141 Mass. 590, 6 N. E. 837; *Mitchell* v. *Rome R. Co.,* 17 *Ga.* 574(3). Agents must observe all the formalities required by the charter. *Dobbins* v. *Etowah Mfg. Co.,* 75 *Ga.* 243. The power of an agent to sign notes for his principal must be given in express terms or be necessarily implied from the nature of the agency actually created. *Exchange Bank* v. *Thrower,* 118 *Ga.* 435. In Maine a by-law providing for a regular meeting of a board of directors has been held merely directory. Sampson *v.* Bowdoinham Steam Mill Corporation, 36 Me. 78. While the rules above stated are correct as general rules, and an agent can not bind a corporation by executing a mortgage on its property without its authority, unless it ratifies the act, yet the fact that the authority to make a chattel mortgage is not conferred by formal vote at a regular meeting will not in all cases render it void; especially where there has been a practice on the part of the company to transact business otherwise. 1 Jones on Chat. Mges. (4th ed.) § 51; Ping. Chat. Mges. § 106; 1 Cob. Chat. Mges. § 431; Kraft *v.* Freeman etc. Pub. Asso., 87 N. Y. 625. Where a corporation loosely

committed all its business affairs to a superintendent or general manager, and by a settled course of business he acted for it in all matters, including buying and selling property, and all of the directors and stockholders, with full knowledge of this, held no meetings and took no action, but acquiesced for a considerable length of time in his exercise of authority, if he borrowed money for the company and gave a chattel mortgage on its property, and no objection was made thereto, but his action was acquiesced in, authority to execute a mortgage might be inferred, or, if not original authority, ratification, as against the corporation or its stockholders who so acquiesced.    See, on this subject, 10 Cyc. 1200; Martin *v.* Niagara Falls Co., 44 Hun, 131; Estes *v.* German Bank, 62 Ark. 7; Sprangler *v.* Butterfield, 6 Col. 356 (4); Bank of Middlebury *v.* Rutland R. Co., 30 Vt. 160; Wood *v.* Corry Waterworks Co., 44 Fed. 146, 12 L. R. A. 168; Foot *v.* Rutland R. Co., 32 Vt. 633; Longmont Supply Co. *v.* Coffman, 11 Col. 551; Poole *v.* West Point Asso., 30 Fed. 513.    Some of these authorities are not in accord with the case of *Monroe Mercantile Co.* v. *Arnold,* supra, but they are cited to show the trend of adjudication in the direction of holding that while action on the part of directors or stockholders may not be performed in the regular and proper method, nevertheless where an officer is entrusted with the performance of the entire functions of the corporation, and this has become a settled policy, his act in executing a mortgage, acquiesced in by all the directors and stockholders, will be held binding.    This is especially true in equity.    Judge Thompson, in his article on "Corporations," in the Cyclopedia of Law and Procedure, says: "Where the shareholders of a corporation, by their direct act or acquiescence, invest the executive officers of the company with the powers and functions of the board of directors as a continuous and permanent arrangement, the board being entirely inactive, and the officers discharging all its duties, a mortgage on the property of the corporation, made and executed in its behalf by such officers, is valid, although not authorized by any vote of the shareholders or directors. . . But in the absence of circumstances of assent and acquiescence such as may afford circumstantial or presumptive evidence of a precedent authorization, then, on principles already discussed, the directors can give a valid authorization of so important a measure as the mortgage of the property of the corporation, only when acting and consulting to-

gether as a board, duly assembled." 10 Cyc. 1199; Cunningham v. German Ins. Bank, 101 Fed. 977(3); Palmer v. Toms, 96 Wis. 367, 71 N. W. 654; Miller v. Matthews, 87 Md. 464, 40 Atl. 176. This affords a reconciliation between what might otherwise seem to be conflicting authority, the general rule being laid down in the latter part of the quotation, and the exceptional cases in the first part of it. In the present case the board of directors and the stockholders held no meetings and were entirely inactive, devolving the whole management of the affairs of the company upon Medlock. And this was not a casual or occasional state of affairs, but was continuous and permanent. Medlock was negotiating with Jaudon, the president, for his stock, and took a formal transfer of it shortly after the mortgage was executed. LaRoche, who held the stock issued to Medlock as security, is not complaining. And as one witness expressed it, Medlock was "the lock, stock and barrel of the concern, —he was the whole thing." Or, as another witness expressed it, "he practically did all the running." Apparently he had exercised the entire functions of the corporation, including buying and selling property. After his purchase of Jaudon's stock, he renewed the note in the name of the corporation more than once. Under this condition of affairs, we think that the mortgage should be held good as against the corporation, and also as against a subsequent creditor who obtained a lien, if at all, by suing out a distress warrant after the record of the mortgage and with full knowledge of such mortgage. The rent accrued long after the making of the mortgage. Indeed the landlord's lien arose only upon the levy of the distress warrant. Civil Code, §3125. And the evidence leaves it in doubt as to when the levy was made, relatively to the time when the restraining order was passed. The judge of the superior court did not err in holding that the lien of the mortgage was superior to that of the distress warrant. See 10 Cyc. 1196; Antietam Paper Co. v. Chronicle Pub. Co., 115 N. C. 143, 20 S. E. 366.

2. Objection was made to the admission, of certain evidence in regard to the corporation and its acts, on the ground that the books were the best evidence. It appears, however, from the evidence, that no minute-books or stock-books were found, either by the temporary administrator, the receiver, or the purchaser from the receiver. The temporary administrator did testify, that he found a sheet of paper which contained a memorandum purporting to be

the minutes of some meeting, that it was a small piece of paper, hardly a full sheet, written·in pencil, and that he thought the piece of paper was among the papers in his office, but could not find it. In another part of the testimony he said, that one Chaplain, representing Mrs. Medlock, came to his office, and he handed to Chaplain some personal effects, "some things that·were taken out of Mr. Medlock's pocket; and I think I handed him that piece of paper, but I am not sure. I can not say that I took it to the office. Mr. Chaplain is dead." The court did not err in holding that a sufficient foundation had been laid, and in admitting parol evidence in regard to the transactions of the company, the sole objection to the testimony being that the books were the best evidence. The case was submitted to the presiding judge without a jury, to decide both upon the law and the facts, and he found that there was no stock-book, no minute-book kept, no corporate seal, and no record of any corporate action. Nor was there error in admitting the mortgage of Lawton in evidence. If it had been executed under the common seal of the corporation, a presumption of authority would have arisen. But the absence of a seal was not fatal to it, under the facts already discussed.

3. Where a mortgage was given to secure a note, and it was provided in the instrument that the payee of the note had agreed to renew it from time to time, it was admissible to show that a note bearing a later date was a renewal of that first given.

4. It was error to admit evidence of Lawton in regard to transactions with Medlock, who was deceased and whose administrator was a party to the case. He was not competent as a witness even to testify to the delivery of the mortgage to him. But evidence so admitted was not, under the facts of the case, of sufficient materiality to require a reversal. The mortgage in fact was recorded and in Lawton's possession with the note. It purported to be signed by the corporation through Medlock as superintendent and general manager. If his evidence had been rejected, we do not think it would have changed the result. The presiding judge added, after his signature to the bill of exceptions, a note in which he said that most of the evidence referred to was in fact rejected. But the statements in the bill of exceptions already certified can not be changed by a note following the certificate.

Letters are the best evidence of their own contents. But the

evidence admitted here, to the effect that Medlock had written to Jaudon about buying and selling some goods, was not sufficiently material, in view of all the evidence, to require a new trial.

5. Only one material error was committed. Lawton was made a party defendant to the equitable petition filed by Stubbs, administrator, and injunction was prayed to prevent his proceeding to levy on the property under a foreclosure of his mortgage. A temporary restraining order was granted, and the next day he voluntarily applied for and obtained a consent order directing the receiver to sell the property and to pay into court the fund arising, any liens on the property being preserved on the fund, and the mortgaged property being sold separately. His application was based on the ground that the business could not be properly conducted, and that the security for his debt was deteriorating in value and was of such a nature that there was great expense connected with the keeping of it. He afterwards filed an "answer and intervention," in which he alleged that the amount arising from the sale of the mortgaged property was $1,050, and that, "after applying the proceeds received from the sale of the said mortgaged property, there would still be an indebtedness due the said Lawton in the sum of $      , and that he was entitled to share pro rata on this indebtedness with the other creditors in the amount remaining from the sale of said property." Where a mortgagee is made a defendant in an action seeking to place the property of the mortgagor in the hands of a receiver, and is involuntarily prevented from foreclosing his mortgage, and does no more than contest the appointment of a receiver, he is not liable for the costs or expenses of the proceeding. In *Bradford's* case, infra, it was held that merely calling the court's attention to the lien did not render the mortgagee liable for costs or expenses, especially where the plaintiffs attacked the mortgage by amendment and made the mortgagee a party defendant. If the mortgagee comes in and makes himself a party complainant, and sets forth the fact of his mortgage, and voluntarily litigates with the other creditors, he thereby recognizes the necessity for the petition and ratifies the filing of it; and thus becomes chargeable with his proportion of the expenses of the suit. *Lowry Banking Co.* v. *Abbott*, 87 *Ga.* 134; *Lewis* v. *Edwards*, 92 *Ga.* 533; *Central Trust Co.* v. *Thurman*, 94 *Ga.* 735; *Bradford* v. *Cooledge*, 103 *Ga.* 753, 761. When the defendant Lawton applied to the court and

obtained an order for a sale of the property through the instrumentality of the receiver, and afterwards filed an answer and intervention, praying not only to have the amount arising from the sale of the mortgaged property paid to him, but also to share in any other funds in the hands of the receiver, he voluntarily recognized the necessity for a receiver, and used the equitable method of securing payment. He therefore became liable for his pro rata share of the costs. This error, however, does not require the grant of a new trial; but it is directed that the presiding judge so modify his decree as to charge the mortgagee with his proper share of the costs and expenses, to be determined by the ratio between the amount realized from the sale of the mortgaged property and the total amount on hand for distribution, not including the stock sold as the individual property of Medlock. It does not affirmatively appear that any of such funds arose from operating the business. No other error requiring correction appears in the record.

*Judgment affirmed, with direction. All the Justices concur, except Atkinson, J., who did not preside.*