**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 15, 2013

# In the Court of Appeals of Georgia

A13A0088. WARD v. WARD et al.

RAY, Judge.

This case involves a dispute between shareholders regarding majority ownership, management, and control over B & W Carry-Out, Inc. ("B & W"), a small, family-owned corporation. Gordon Frank Ward, Jr. (the appellant) filed a complaint against his sisters, Pamela Ward and Denise Eilers (the appellees), seeking a declaratory judgment and asserting claims for injunctive relief, accounting, money had and received, misappropriation and waste, and attorney fees. The appellees each filed answers and counterclaims seeking a declaratory judgment and asserting claims for accounting, conversion, tortious interference with contractual relations, tortious interference with business relations, intentional infliction of emotional distress, punitive damages, and attorney fees. The trial court entered a declaratory judgment,

finding that the issuance of certain shares of stock did not comply with Georgia law and, thus, that the appellant is not the majority shareholder of the corporation. The trial court did not rule on the parties' other claims, which remain pending below. The appellant appeals the trial court's order on declaratory judgment. For the following reasons, we affirm.

1. We first address our jurisdiction. The appellees contend that the appellant's direct appeal from the order on declaratory judgment is not properly before this Court. The appellees contend that the order is not a final judgment subject to direct appeal because the parties' other claims remain pending. However, we find that we have jurisdiction. A declaratory judgment is directly appealable because it has the "force and effect of a final judgment" and is reviewable as such. OCGA § 9-4-2 (a). This is so even if other issues in the case remain pending before the trial court. *Building Block Enterprises, LLC v. State Bank and Trust Co.*, 314 Ga. App. 147, 150 (1) (723 SE2d 467) (2012).

2. In this case, all the parties sought a declaratory judgment as to who was the majority shareholder in B & W. The resolution of this issue turns on whether certain stock certificates issued to the appellant, which purportedly make him the majority shareholder, were validly issued. After hearing oral argument and reviewing the

2

record, the trial court found that the transfer of the stock certificates at issue did not comply with OCGA § 14-2-621 (b) because the transfer was not authorized by B & W's board of directors. In four enumerations of error, the appellant contends that the trial court erred in finding that the transfer of the stock at issue was not valid. We discern no error.

"A trial court's findings of fact after a declaratory judgment hearing are analogous to a jury verdict and will not be interfered with if there is any evidence to support them. However, we review the trial court's conclusions of law de novo." (Citation and punctuation omitted.) *Bank of the Ozarks v. DKK Dev. Co.*, 315 Ga. App. 539, 540 (726 SE2d 608) (2012).

The record shows that B & W was incorporated on October 4, 1960. According to its bylaws, B & W transacted business and acted under the authority of a board of directors. The president of the corporation has general and active management of the corporation, and is required to ensure that all orders and resolutions of the board of directors are carried into effect. The president is also required to perform other duties as the board may direct. Among those duties, the president, along with the secretary of the corporation, is required to sign all stock certificates.

3

From its inception until 2006, B & W issued forty-five stock certificates. Said certificates were either expressly authorized by the board of directors prior to the issuance of the stock or ratified by the board thereafter . B & W had a history of receiving loans from its shareholders and then later converting this debt to equity in B & W by issuing additional shares of stock in exchange for cancellation of the debt. The record shows that such transactions required approval from the board of directors,

The last meeting of the board of directors and shareholders was on February 3, 2005. The appellant contends that in 2006 that B & W's board of directors consisted of three members. Although the record is unclear, there is some evidence to indicate that B & W had five members on its board of directors at that time: Gordon Frank Ward, Sr., Martha Ward, appellees Pamela Ward and Denise (Ward) Eilers, and the appellant. In addition to serving as board members, Gordon Frank Ward, Sr. was B & W's president and the appellant was its vice-president/secretary. Prior to the transfer of the specific stock certificates at issue in this case, no shareholder had majority ownership of stock in B & W.

4

Between 2006 and 2008, the president, along with the appellant, issued stock certificates numbered 46, 48, 49, 50, and 51[1] (the "disputed stock certificates") to the appellant to compensate him for monies he personally paid on behalf of the corporation for repairs to corporate property and for other matters. This was done without a formal resolution or authorization by the board of directors. The issuance of the disputed stock certificates significantly increased the appellant's number of shares and purportedly made him the majority shareholder in B & W.

On April 25, 2006, the president executed an affidavit to be used as a substitute for the 2006 meetings of the stock holders and board of directors. The board of directors also signed the document, acknowledging and approving the use of the affidavit for this purpose. At the time the board of directors signed the document, the affidavit did not mention the issuance of the disputed stock certificates to the appellant. The record is undisputed that exhibits B through F to the affidavit, signed only by the president and the appellant in their capacities as officers of the corporation, were later attached to the affidavit as purported authorization for the

---

[1] Stock certificate 47 was an apparent transfer of 4.75 shares to B & W based on the appellant's surrender of those shares to satisfy a debt he owed to B & W.

issuance of the disputed stock certificates and that the exhibits were not approved by other members of the board.

(a) The appellant contends that the trial court erred in finding that the disputed stock certificates were not valid due to the lack of authorization by the board of directors. The appellant argues that the issuance of the disputed stock certificates did not require a formal resolution board, but that the issuance of the disputed stock certificates was nevertheless approved by the board because the appellant and Gordon Frank Ward, Sr., who had a power of attorney from board member Martha Ward, constituted a majority of the board of directors and that they signed the stock certificates in their respective capacities as officers of the corporation. We find that this argument lacks merit.

OCGA § 14-2-621 (b) provides that "[t]he board of directors may authorize shares to be issued for consideration consisting of any tangible or intangible property or benefit to the corporation, including cash, promissory notes, services performed, contracts for services to be performed, or other securities of the corporation." Furthermore, Article IV, Section 4 (a) of B & W's bylaws provides that "[a] majority of the members of the [b]oard of [d]irectors shall be necessary to constitute a quorum for the transaction of [corporate] business, and all action by the [d]irectors shall

6

require a majority vote of said [d]irectors." Article IV Section 3 also requires that notice be given to each director prior to all meetings of the board of directors.

The evidence is undisputed that B & W's board of directors did not hold a meeting in 2006 or enter a formal resolution authorizing the disputed stock certificates. Although the appellees approved of the use of the April 25, 2006, affidavit in lieu of any 2006 meetings of the board of directors, the affidavit, when signed, did not mention the issuance of stock. Also, the act of signing the stock certificates as officers of the corporation does not substitute for the formal approval of the board, and nothing on the certificates themselves even indicates as such. Accordingly, we find that the issuance of the disputed stock certificates did not comply with B & W's bylaws.

Based of our above finding, we need not address the appellant's argument that the issuance of the disputed stock certificates was supported by adequate consideration as contemplated by OCGA § 14-2-621 (c).

(b) The appellant contends that the trial court erred by failing to recognize B & W's settled course of business regarding the issuance of stock and the board of directors' acquiescence in the president's authority to issue stock. This position is without merit.

The appellant relies on *Garmany v. Lawton*, 124 Ga. 876 (53 SE 669) (1906). In *Garmany*, our Supreme Court held that where all of the directors and shareholders of a corporation, by their acquiescence, invested the executive officer of the company with the powers and functions of the board of directors under a continuous and permanent arrangement, and where the board of directors was entirely inactive, that the actions by the executive officer on behalf of the corporation were valid as against the corporation even though the officer's actions were not formally authorized by the board of directors or shareholders. Id at (1). Although the appellant contends that B & W had a settled course of business of allowing the president and the secretary to informally issue stock, there is evidence such stock issuances (other than the ones at issue here) were either expressly authorized by the board of directors or ratified by the board thereafter . Moreover, the evidence shows that all issuance of B & W stock to shareholders in exchange for cancellation of corporate debt required authorization from the board of directors.

Also, unlike in *Garmany*, the evidence in this case shows that the board of directors were actively involved in the affairs of the corporation, regularly holding meetings and approving the corporate minutes, from 1960 to 2006. Although the last formal meeting occurred in 2005, the record in this case shows that the board of

directors remained active after its last formal meeting, as evidenced by the fact that it approved the president's April 25, 2006, affidavit shortly before the president began issuing the disputed stock certificates. There is no evidence that the board of directors delegated its authority or that the president was solely responsible for the management of the corporation's affairs on a continuous and permanent basis.

(c) In a related enumeration of error, the appellant contends that the trial court erred in finding that the president lacked the authority to issue the disputed stock certificates, arguing that the president had the implied authority to do so. For the reasons stated in Division 2 (a) and (b), this argument lacks merit.

(d) Finally, the appellant contends that the trial court erred because the issuance of the stock was ratified when the corporation received the benefit of the consideration, i.e. - the cancellation of corporate debt owed to the appellant. We disagree.

The appellant cites *Jackson v. Southern Pan and Shoring Co.*, 258 Ga. 401 (369 SE2d 239) (1988), to support his argument. In that case, Jackson guaranteed a loan for Southern Pan in exchange for receiving a stock warrant giving her the option to purchase 80 percent of Southern Pan's stock. When Jackson attempted to exercise her stock warrant, the corporation initiated a declaratory judgment action arguing that

the stock warrant was void because it was issued prior to Southern Pan's incorporation. Id at 401. Our Supreme Court found that the stock warrant was enforceable because the evidence was undisputed that the individuals who ultimately served on Southern Pan's board of directors expressly authorized the stock warrant prior to Southern Pan's incorporation, and they expressly ratified the warrant immediately following its incorporation. The Court further found that Southern Pan unquestionably received the benefits of the consideration for the stock warrant - Jackson's guaranty of the loan. Id at 401 (1).

The facts of the present case are inapposite. In *Jackson*, the members of the board had knowledge and notice of both the stock warrant and the benefit received by the corporation. Here, there is no evidence that the appellees had notice or knowledge of the issuance of the disputed stock certificates or the benefit received by the corporation. To prove ratification by a corporation, it must be proven that the governing body of the corporation had full knowledge of all material facts in connection with the transaction in question. *Dragon Corp. v. Syphers*, 85 Ga. App. 781,784 (70 SE2d 105) (1952). Furthermore, the corporation's knowledge must be more than just knowledge on the part of the agent(s) whose acts are the subject of the purported ratification. Id. Although the record shows that B & W's president and the

10

appellant had knowledge of the issuance of the disputed stock certificates in exchange for cancellation of corporate debt, the record does not show that their knowledge was notice to the full board of directors. Under these circumstances, we cannot say that the issuance of the disputed stock certificates was ratified by the corporation.[2]

For the above reasons, we find that the trial court did not err in granting declaratory judgment in favor of the appellees.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*

---

[2]In our ruling herein, we do not reach the issue as to whether the debt formerly owed by the corporation to the appellant springs back to life, given that the stock at issue has been declared null and void.