No. 93.—Joseph J. Printup, plaintiff in error, *vs.* Daniel R. Mitchell, defendant.

[1.] Notwithstanding the answer to a bill filed for specific performance denies the agreement; still, it may be established by *aliunde* proof.

[2.] Where the direct and cross questions are precisely the same, the latter may be answered by reference to the answers already made to the direct interrogatories.

[3.] A witness may testify as to his *understanding* of what was said or done by the parties.

[4.] When an instrument is apparently altered, it will be presumed to have been done at the time of its execution, if nothing is shown to the contrary. But the whole matter, both as to the fact of the alteration as well as the *quo animo* with which it was done, is left to the Jury.

[5.] The Court, upon the usual proof of the execution of the instrument, will admit it in evidence, without reference to the character of any alteration upon it, about which the Court will presume nothing.

[6.] When a witness, himself, is competent to testify, a receipt given by him is inadmissible.

[7.] When a person is doing any act material to be understood, his declarations made at the time, are admitted in evidence as a part of the *res gestæ*, if made in good faith, of which the Jury are the judges.

[8.] To make these declarations evidence, they must be concomitant with the principal act, and connected with it.

[9.] There are cases, though rare, where acts done by the defendant can be made a ground for compelling him to perform the agreement; particularly, if he be put in possession of the premises.

[10.] Specific performance will never be decreed in favor of a vendor who has had no prejudice.

[11.] Courts of Equity do not profess to execute parol agreements, merely because they are satisfactorily proved; there must be prejudice to the plaintiff.

[12.] Where an injunction to stay Common Law proceedings has been improperly granted, it cannot be made the pretext for retaining a bill for relief, which, of itself, has no equity.

[13.] To maintain a bill for the purpose of accounting, it must appear that there is some complexity in the accounts, or some other special cause which will prevent an adjustment at Law.

[14.] Verbal declarations, to be available as evidence, should not only be clearly proved, but also, it should appear that they were deliberately made and precisely identified.

[15.] Verbal admissions, hastily and inadvertently made, should have little or no binding efficacy.

[16.] A parol contract for land, like the reformation of a deed by parol proof, should be made out so clearly, strongly and satisfactorily, as to leave no reasonable doubt as to the agreement.

In Equity, from Floyd Superior Court. Tried before Judge TRIPPE, December Term, 1854.

The facts of this case are as follows:

Joseph J. Printup had brought his action at Law against Daniel R. Mitchell, claiming some Two Thousand Dollars for work and labor done and materials furnished, in enlarging the buildings on a certain lot of Mitchell's in the town of Rome, known as the Buena Vista House.

Mitchell filed this bill enjoining said action, setting up a parol agreement made between Printup and himself, by which Printup was to do the work in question, and for compensation, was to become a half owner of the property. The bill charged, also, that Mitchell had advanced to Printup, during the progress of the work, some $1800; that he, Mitchell, had received for rent of the premises about $800; that Printup had built on the land two offices, one of which was now occupied by Mr. Underwood who, complainant supposed, held under Printup; but the bill did not positively allege that Printup had ever had possession of the premises, except while he was carrying on the work. It seems that the premises had been for some time untenanted. The bill prayed for an account, and that Printup should take a deed to a moiety of the property, and that the same should be divided.

A motion was made to dismiss this bill for want of equity, at the commencement of the trial, and afterwards, when the testimony was closed; and the refusal of this motion is assigned as error.

The defendant, in his answer, denied the existence of any such contract as that set up in the bill.

The following points arose during the trial: Defendant objected to the testimony of T. V. Smith and others being admit-

ted to prove the parol agreement, it having been denied by the answer. Defendant also objected to the interrogatories of Young Mann and of A. N. and S. H. Verdery, offered by complainant, because the witnesses did not answer the cross-questions, the witnesses only referring to their answers to the direct questions.

The witness, Young Mann, was permitted by the Court, (the defendant objecting) to state "his understanding" of what he heard the parties say in relation to the agreement between them.

Certain receipts of M. A. Choice, W. C. Butler and James McAmis, introduced by plaintiff, were allowed to go to the Jury, the defendant objecting to them, on the ground that they appeared, on their face, to have been altered. The Court rejected the following receipt of others similar to it, offered by defendant:

"Received of J. J. Printup $25, in part payment, as per contract with D. R. Mitchell for wood work on the Buena Vista House.     (Signed)       JAMES McAMIS."

(McAmis was a witness in the cause by interrogatories.)

The Court also rejected evidence offered by defendant, of his own sayings, while employed in the work, as to whom he was doing it for. And on all these rulings of the Court, defendant assigns error. A great deal of testimony was introduced on both sides, not particularly noticed.

The Court charged the Jury, among other things, that it was their duty to reconcile the testimony if possible; if not, then to find according to the preponderance of the testimony. That if they considered the contract proved, the complainant was entitled to relief. The Jury rendered a decree for complainant, in conformity to the prayer of his bill; and defendant excepts to the said rulings and charges of the Court.

J. W. H. UNDERWOOD, for plaintiff in error.

ALEXANDER; AKIN, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] If the defendant denies the existence of the parol contract sought to be performed, and insists upon the benefit of the Statute, can the case be made out by parol evidence? This is the first point presented in the bill of exceptions; and is, we concede, a vexed question.

There is high authority for holding that the bar to a decree is complete under such circumstances; but we think the more modern practice and the better doctrine is, to allow the answer to be contradicted and overcome by *aliunde* evidence. To allow the answer to go uncontradicted is to furnish too strong a temptation to perjury by making it the interest of the defendant, in every case, to deny the agreement; since, if confessed, he would be bound to perform it. It seems to us that the rule once established, that the defendant is bound to confess or deny the agreement, and about which there is no longer any dispute, it must follow, as a necessary consequence, that where the agreement is denied, the answer is liable to be contradicted by parol proof. And this disposes of the objection made to the testimony of T. V. Smith and others.

[2.] Certain depositions were objected to, because the witnesses did not answer the cross-interrogatories, except by reference to their answers to the direct questions.

This practice has been generally followed in our Courts, and we see no objection to it upon principle. If the direct and cross-questions are precisely the same, why should the answer to the latter be repeated, in *totidem verbis?* Should the interrogatory be varied or contain some additional inquiry, the answer, of course, should be adapted to the new phase in which the question is propounded.

[3.] The testimony of Younge Mann was objected to, because he only testified as to his *understanding* of what passed between the parties relative to the agreement. This species of evidence was held to be admissible by this Court, in *Moody & Wife vs. Davis,* (10 *Ga. R.* 403.)

[4.] Another exception is, that the receipts of Mrs. M. A. Choice, Mr. W. C. Butler and Mr. James McAmis were allowed to go to the Jury without explanation, the defendant objecting to them on the ground that they appeared, upon their face, to have been altered.

In ancient times, when few could write and when the business which required writing, was done by those who were skilful, where an instrument was suspicious, by reason of any apparent alteration, the Court took it upon itself to decide, upon an inspection of the paper, that it was void. (*Coke Litt.* 35 *n.* 7.) But such a principle could not long be supported. And the rule may now be thus stated: an alteration of a written instrument, if nothing appear to the contrary, should be presumed to have been made at the time of its execution. But, generally, the whole inquiry, whether there has been an alteration, and if so, whether in fraud of the defending party or otherwise, to be determined by the appearance of the instrument itself, or from that and other evidence in the case, is for the Jury.

[5.] The Court, upon the usual proof of the execution of the instrument, should admit it in evidence, without reference to the character of any alterations upon it, about which the Court will presume nothing, leaving the whole question to be passed upon by the Jury. (*Leyfield's case,* 10 *Rep.* 92. *Coke Litt.* 225, *a.*    4 *T. R.* 338.    2 *Dal.* 306.    1 *Peters.* 560.    2 *N. Hamp. Rep.* 543.    20 *Verm.* (5 *Washb.*) 205.    11 *Conn.* 531.    9 *S. & M.* 375.    5 *Barr.* 279.)

[6.] The defendant offered a receipt, given by James McAmis, to J. J. Printup, to the following effect: " Received of J. J. Printup $25, in part payment, as per contract *with D. R. Mitchell,* for work done on the Buena Vista House," &c.

McAmis, himself, being a competent witness, his receipt was hearsay evidence; and therefore, properly ruled out by the Court.

[7.] The Court rejected the sayings of the defendant, while employed on the work, as to *whom* he was doing it for.

We are of the opinion, that the declarations made by Mr. Printup, while engaged in putting up the improvements, that

he was doing the work for Mr. Mitchell, ought to have been admitted in his favor. They were connected with the principle fact under investigation. They were made at a time and under circumstances when it was not the interest of the declarant to disparage his title to a moiety of the lot. These declarations and conversations show the true opinion and state of mind of Mr. Printup at that particular period. They are parts of the *res gestæ*.

Where a person changes his residence, or is upon a journey, or leaves his home, or returns thither, or remains abroad, or secretes himself, or does any other act material to be understood, his declarations, made at the time of the transaction, and expressive of its character, motive or object, are regarded, say the authorities, as " verbal acts, indicating a present purpose and intention ;" and are therefore admitted in proof like any other material facts. (See 1 *Greenlf. Ev. sixth edition*, §108, *n.* 1 and the cases there cited.)

It is now well settled, that the declarations of the possessor of land, that he is tenant to another, are admissible as evidence, because made against the interest of the party.- But Mr. *Greenleaf* suggests, that no good reason can be assigned why every declaration, if made in good faith and under circumstances calculated to create no suspicion of its sincerity, should not be received as a part of the *res gestæ*, leaving its effects to be governed by other rules of evidence. And he refers to numerous precedents, English and American, in support of the proposition. (1 *Vol. 6th Ed.* §109, *n.* 4.)

It has been held, that a statement made by a person not suspected of theft, and before any search made, accounting for his possession of property, which he is afterwards charged with having stolen, is admissible in his favor. *Rex. vs. Abraham*, (2 *Car. & K.* 550.) And letters written during absence from home, are admissible as evidence, explanatory of the motive of departure and absence, the departure and absence being considered as one continuing act. *Rawson vs. Haigh*, (2 *Bing.* 99, 104.)

[8.] To make these declarations evidence, they must be *concomitant* with the principle act and so connected with it as to be regarded as the mere result and consequence of co-existing motives, in order to form a proper criterion for directing the judgment which is to be formed upon the whole conduct. (1 *Greenlf. Ev.* §110.)

[9.] A motion was made to dismiss the bill at the beginning of the trial, and repeated when the testimony was closed. And the refusal of the Court to grant the motion is assigned as error.

What are the facts?

Joseph J. Printup sues at Law to recover of D. R. Mitchell for work and labor done and performed and materials found in the improvement of his premises in Rome. Mitchell files his bill, in which it is alleged that this pretended indebtedness originated on a parol contract between Printup and himself, to the effect, that upon the completion of the improvements upon the Buena Vista lot by Printup, he should be entitled to a conveyance from Mitchell to a moiety of the property. It charges that the improvements have been finished, and prays that Printup may be decreed to take a deed, and that his action at Law be perpetually enjoined.

Can a bill for specific performance be maintained under such circumstances? The old practice, it is said by some writers in Courts of Equity, was in *all* cases, *first* to send the parties *to Law*, to ascertain whether there was any remedy there or not. And provided there was no remedy at Law, then Equity would interpose. To sustain this bill, this ancient rule would have to be reversed. And the interference of *Equity* would be invoked in *all* cases, in the *first* instance, notwithstanding the remedy at Law was full and complete.

[10.] [11.] It is exceedingly difficult, at all times, for the *vendor* to ask the interposition of a Court of Equity to inforce a parol contract. Chancery will sometimes grant relief, especially where possession has been given and *retained* by the vendee. In *Buckmaster vs. Hanop*, (7 *Ves.* 341) the Court say: "The vendor had no prejudice. He had done nothing

to entitle him to say the non-execution was a fraud upon him. Had he let Barlow into possession, that would be an act by which he might have had a prejudice. I am aware there are cases that acts done by the defendant can be made a ground for compelling him to perform the agreement, but it is difficult to bring these cases to bear; for what do such acts amount to when there is no prejudice to the plaintiff? Only to proof of the existence of the agreement. But the Court does not profess to execute a parol agreement merely because it is satisfactorily proved."

In the case before us, it may be fairly inferred from the proof, that possession never was given by Mitchell to Printup, only as *contractor*, to enable him to make the improvements. There is not a scintilla of evidence that he ever held the lot one hour as *purchaser*. One thing is certain, the occupancy by him has long since been abandoned, and the premises are entirely under the control or at the disposal of Mr. Mitchell. What more does he want? The property has been paid for by Printup. Mitchell holds it, and his complaint is that Printup perseveringly refuses to take a title to half of it. And he prays Chancery to lay its hands upon him and compel him, *nolens volens*, to take a conveyance!

[12.] It is said, in the argument, that Equity having obtained jurisdiction for the purpose of the injunction, will retain it to administer the relief sought. But the obvious reply to this is, that the injunction to stay the proceeding at Law should never have been allowed, the defence at Law being complete. And this being so, it cannot be resorted to as a pretext for holding on to the bill for specific performance—two wrongs cannot make a right.

[13.] Again, it is contended that the bill should not be dismissed, as it will serve to adjust the unsettled accounts between the parties.

To make this ground tenable, it should further appear that the accounts cannot, owing to their complexity or some other special cause, be arranged in a Court of Law. Nothing of this sort is pretended.

There is no foundation left to support this bill.   Indeed, it is rather an extraordinary proceeding.   Not only does Mitchell remain in the undisturbed and undisputed ownership and occupancy of the property, a moiety of which, if the averments in the bill are true, has been bought and paid for by Printup : but he has in his hands some Eight Hundred Dollars coming to Printup, as his share of the net proceeds arising from the rents, issues and profits of the lot!

What is to be the practical result of this decision ?   Mitchell sets up this special contract, as he is entitled to do, viz : that the work and labor were done and the materials furnished by Printup, in consideration that he (Mitchell) would convey to Printup one half of the improved lot.   If he can prove his defence, he defeats a recovery at Law.   He holds a demand against Printup for upwards of Eighteen Hundred Dollars for money advanced to enable Printup to carry on the job.   He not only prevents a finding for Printup, but he gets a judgment against him by way of a set-off for this counter-claim.   He then has the Buena Vista House, the Eight Hundred Dollars coming to Printup as his share of the rent—has defeated his suit at Law and obtained a judgment against Printup for more than Eighteen Hundred Dollars !

Ought not this to satisfy Mr. Mitchell ?   Can he reasonably desire more ?

All that I have said, proceeds upon the supposition, of course, that Mitchell will establish, by proof, the case made by his bill.   If he cannot, at Law, he would have failed in Equity. But whether he can or cannot, will make no difference as to his equity.

And now, the position of parties will be changed.   Printup will file his bill for specific performance and for account. Mitchell will repudiate the agreement and insist that the complainant be held to strict proof thereof.   He will refer to the answer of Printup to his bill, flatly denying that any such contract ever existed; and with a deference for his adversary never before manifested, will insist that the Jury shall believe him in preference to himself.   Printup will exhibit the sworn

bill of Mitchell, and with a self-distrust truly amiable, contend that the Jury shall give full faith and credit to his opponent. How the parties shall extricate themselves from this dilemma, we will not anticipate, but leave it to the ingenuity of their able Counsel to point out a way when the exigency shall arise. Sufficient unto the day, &c.

[14.] Before concluding, we propose to notice, briefly, two points in the charge of the presiding Judge.

In commenting upon *admissions*, he remarked, that when clearly established, they were entitled to high consideration. Knowing, as we do, the danger of this species of evidence, we think it best not to relax any of those rules which are designed to guard it against abuse. It is not only necessary that the declarations should be clearly proved, but they should, say the books, be deliberately made and precisely identified. (*Riggs vs. Curgenven,* 2 *Wils.* 395, 399. *Glassford on Ev.* 326. *Commonwealth vs. Knapp,* 9 *Pick.* 507, 508, *per Putnam, J.*)

[15.] Indeed, *verbal* admissions, hastily and inadvertently made, however clearly established, should have little or no binding efficacy. (*Salem Bank vs. Gloucester Bank,* 17 *Mass. R.* 27. *Barber vs. Gingell,* 3 *Esp.* 60. *Smith vs. Bumham,* 3 *Sumn.* 435, 438, 439. *Cleveland vs. Burton,* 11 *Vermont R.* 138.)

It is unquestionably true, that while all experience teaches that verbal declarations should be received with great caution, subject as they are to much imperfection and abuse, still, they exert, usually, a most controlling effect upon the minds of the Jury.

[16.] Our learned brother instructed the Jury to weigh the evidence and render a verdict accordingly. A parol contract for land, like the reformation of a deed by parol proof, should be made out so clearly, strongly and satisfactorily as to leave no reasonable doubt as to the agreement. It is a serious matter to substitute a parol sale of real estate for a deed.

The decree of the Circuit Court is reversed.