ATLANTA, AUGUST TERM, 1860.    371

The Planters' & Mechanics' Bank of Dalton vs. Erwin.

# THE PLANTERS' & MECHANICS' BANK OF DALTON vs. ERWIN.

1. Where a material alteration is made in an instrument, in a different hand-writing from that in which it is written, and a plea of *non est factum* is filed, it is error to instruct the Jury, *in such a case*, that the Law presumes the alteration was made at the time the instrument was executed. The Law presumes nothing in such a case, but leaves the whole question to be passed upon by the Jury.

2. By the 9th section of the Charter of the Planters' & Mechanics' Bank of Dalton, it is declared that "the bills obligatory and of credit, notes and other contracts whatever, in behalf of said corporation, shall be binding upon the said Company: Provided, the same be signed by the President and countersigned by the Cashier of said corporation; and the funds of said corporation shall, in no case, be liable for any contract or engagement whatever, unless the same be signed and countersigned as aforesaid." *Held*, that Bank Bills, signed by a Vice-President, and countersigned by an Assistant Cashier, there being a regular President and Cashier in office at the time discharging their respective duties, are not binding on the corporation.

Assumpsit, in Whitfield Superior Court. Tried before Judge WALKER, at the April Term, 1860.

This was an action brought by John Erwin, to recover the sum of one hundred and twenty-five dollars, due on thirty-four bank notes, dated Dalton, July 1st, 1855, and purporting to be the notes of the Planters' & Mechanics' Bank of Dalton. The notes were signed by S. C. Hull, as vice-president, and countersigned by M. Hobart, as assistant cashier.

To this action the Planters' & Mechanics' Bank of Dalton, pleaded: That the notes sued on were not its act and deed; that it never authorized S. C. Hull and M. Hobart to sign said notes, and that said Hull and Hobart were not authorized by said bank to act as vice-president and assistant cashier in any manner, or to bind the bank in any form.

On the trial of said case, the plaintiff introduced the notes sued on, and proved that they were presented at the bank and payment demanded, on the 16th of March, 1857, prior to the commencement of the action.

The plaintiff also introduced, in evidence, the following extract from the Minutes of the Board of Directors of the bank, produced in Court under a notice: ·

**ALTERATIONS.** "The rule is well settled in this State that **alterations are, prima facie, presumed to have been made before execution,** unless the paper be denied on oath: 17 Ga. 558; 31 Ga. 371; 36 Ga. 482." Thrasher *v.* Anderson, 45 Ga. 544.

"**Where a change in a material part, made by erasure and inter-lineation,** appears in a written contract, **it is not such an "alteration"** **as is referred to in section 2852 of the Code,** if made before execution, but is such an alteration if made afterwards, without the consent of the other contracting party. * * * * The materiality of an

"DALTON, Sept. 13th, 1855.

"At a meeting of the Board of Directors of the Planters' & Mechanics' Bank of Dalton, held 13th September, 1855. Present: James Morris, David Preston, James H. Kibbie, and T. B. Thompson.

"On motion of James H. Kibbie, S. C. Hull, of Chicago, Illinois, be, and he is hereby, appointed vice-president of the Planters' & Mechanics' Bank of Dalton, Geo., so far as to authorize and empower him to sign, as vice-president of said bank, ————— dollars of the bills of said bank, of the new and last issue, from number —— to number ——. Said order passed in consequence of the president of said bank not being able to attend to the same in time, and for want of a sufficient number of impressions, and that M. Hobart, of Chicago, Illinois, be appointed assistant cashier, to sign with the vice-president the above named, and the above amount and description of bills, which said office and the completion of said object, is all the powers delegated by said directors of the bank to them.

"JAMES MORRIS,
"T. B. THOMPSON,
"JAMES H. KIBBIE,
"DAVID PRESTON."

It appeared from the said extract of the Minutes that the name of "Ichabod Tucker" had been erased or stricken out, and the name of "S. C. Hull" interlined, and that the name of "Charles N. Barnes" had been erased or stricken out, and the name of "M. Hobart" interlined.

The proof also showed, that the body of the extract from the Minutes was in the handwriting of James Morris; and that the interlineations was in the handwriting of James H. Kibbie; that the bank had redeemed a small number of bills signed and countersigned like the bills sued on, but had afterwards repudiated the bills thus signed and countersigned, and refused to pay or redeem them; that in January, 1856, Hull was the clerk of Kibbie, in the town of Warren, Trumbull county, Ohio, and that Kibbie afterwards moved to Chicago, Illinois.

The defendant proposed to prove the reason assigned by the bank officers for redeeming a few of the bills signed by Hull and countersigned by Hobart, which was, "that they were ignorant of the number and amount of such bills, and

alteration is a question of law for the court. When the genuineness of the instrument is denied under oath, the time when, and the intention with which, a change was made in it, are questions for the jury." Winkles v. Guenther & Company, 98 Ga. 472 (1, 2), 474, And see Wheat v. Arnold, 36 Ga. 479; Thrasher v. Anderson, 45 Ga. 544; Thompson v. Gowen, 79 Ga. 70; Civil Code of 1895, §5242.

redeemed a few at first rather than that the credit of the bank should suffer; but that so soon as they became aware of the number and amount of the bills in circulation, signed by Hull and Hobart, they—the officers of the bank—promptly repudiated such bills as unauthorized;" which testimony being objected to, was repelled, and defendant excepted.

The defendant also offered in evidence an order on the Minutes of the Board of Directors of the bank, passed since this suit was commenced, repudiating the bills signed by Hull and Hobart, and declaring the alteration of the Minutes as hereinbefore stated, a forgery; which testimony being objected to, was repelled by the Court, and defendant excepted.

The defendant also offered in evidence a bill of indictment against Kibbie for forgery in interlining the names of Hull and Hobart as aforesaid; which was objected to and repelled by the Court, and the defendant excepted.

The testimony being closed, the presiding Judge charged the jury, amongst other things, as follows, to wit:

The issue for you to try is, whether the notes sued on are the notes of the bank or not. The plea of *non est factum* puts upon the plaintiff the burthen of showing that the notes sued on are the notes·of the bank. To do this, the plaintiff has introduced the Minutes of the Board of Directors of the bank, and read from it an order passed by the board, authorizing, as he insists, the parties—Hull and Hobart—who signed these bills as officers of the bank, to act as vice-president and assistant cashier. Having shown this authority, the plaintiff insists that Hull and Hobart were authorized to bind the bank by signing bills. · To this the defendant replies, that the charter of the bank only authorizes the issuing of notes by the signature of president and cashier, and that the board of directors could not authorize any one, as vice-president and assistant cashier, to sign notes binding the bank, and that if the bank could be bound by such action, still, it is not bound in this case, because a forgery has been committed by one James H. Kibbie, by erasing from the order, as originally passed, the names of Tucker and Barnes, and inserting in lieu thereof, and without the knowledge or consent of the Board·of Directors, those of Hull and Hobart. In the opinion of the Court, an order or resolution of the Board of Directors, authorizing certain persons to sign and issue bills in the name of the bank as vice-presi-

CONTRACTS OF CORPORATIONS. "It is settled law that the agents of a corporation must observe all the formalities which are required by the charter of the company to be observed in corporate transactions, and if they act in a manner not authorized by the company's charter, their acts will not be binding. Thus, **where the charter of the company requires a contract of a particular description to be signed by certain officers or approved in a certain manner, no agent**

374     SUPREME COURT OF GEORGIA.

The Planters' & Mechanics' Bank of Dalton vs. Erwin.

dent and assistant cashier, is sufficient authority to make notes so signed and issued, the notes of the bank, and bind it to redeem them. And if you find that such an order or resolution has been passed, and these bills were signed and issued under the authority of such an .order, and that they have been presented, and a demand and refusal of payment made, this will authorize you to find for the plaintiff. But if you find from the evidence, that the erasure of the names of Tucker and Barnes, and the insertion of those of Hull and Hobart, was a forgery, then the bank is not liable to pay these bills. Kibbie, though one of the directors, would not be authorized in the absence, and without the knowledge and consent of the board, to alter the Minutes of their proceedings; and if he did so alter the proceedings, then these notes would not be the notes of the bank, and you should find for the defendant. The presumption of law is, that an erasure appearing upon a paper signed up, was made at the time it was executed; but this presumption may be rebutted by proof. In this case you may consider all the evidence before you, and, from that, determine whether the erasure or interlineation was made by the board, or was a forgery. You may inspect the writing itself and gather all the aid you can from that. The verdict should turn upon the question, whether the names of Hull and Hobart were put in the order by the board or not. If they were, the bank is liable; if not, the bank is not liable. Something has been said about the notes being signed out of the State of Georgia. I do not recollect any testimony going to show where they were signed. In the opinion of the Court, it is not material where they were signed. If they were signed by the proper officers of the bank, the bank is liable for them; if not, it is not liable.

The jury returned a verdict in favor of the plaintiff for one hundred and twenty-five dollars principal, with interest from the 16th of March, 1857, and ten per cent. damages on the principal sum.

Counsel for the defendant then made a motion for a new trial in said case, on the following grounds:

1st. Because the Court erred in rejecting the evidence offered by the defendant to show the reasons assigned for redeeming some of the bills signed by Hull and Hobart, and that such bills were promptly repudiated when the bank

can bind the company by a contract of that description, unless it was executed in the manner prescribed. Morowetz Priv. Corps., §61; Angell & Ames Corp., §291; 1 Daniel Neg. Inst., §387, and citations in each of these authorities; Planters and Mechanics' Bank of Dalton v. Erwin, 31 Ga. 376. Such terms are not merely directory—they are mandatory, and even a majority of the corporators are not at liberty to disregard them, since "they constitute a part of the fundamental agreement be-

learned the extent of the circulation issued by said Hull and Hobart.

2d. Because the verdict of the jury was contrary to evidence, and without sufficient legal evidence.

3d. Because, if the Minutes of the Board of Directors were genuine, and the board had had power to bind the bank, yet no authority is shown to sign the particular bills sued on.

4th. Because the Court erred in instructing the jury that the directors had power to bind the bank for the payment of bills issued by persons as vice-president and assistant cashier.

5th. Because the Court erred in charging the jury, that the board could appoint a vice-president and assistant cashier residing beyond the limits of the State, and that such appointees had the power to bind the bank, by signing and issuing bank notes out of the limits of the State, and in instructing the jury that it was not material where the notes were signed.

6th. Because there was error in the charge given.

7th. Because the Court erred in charging the jury that "the presumption of law was, that an erasure appearing on a paper signed up, was made at the time it was executed," it having been shown by the evidence that the body of the Minutes was in the handwriting of James Morris, and the interlineation in the handwriting of James H. Kibbie.

After hearing argument, the Judge overruled the motion, and refused the new trial, and this is the error assigned in this case.

MOORE & JACKSON, for plaintiff in error.

McCUTCHEON, by MILNER, for defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

We think the Court erred in charging the jury, that the presumption of law was, that the alteration in the order on the Minutes of the bank-book was made at the time the order was entered. The order was written on the Minutes in the handwriting of James Morris. The insertion of different names from those contained in the original order, was in the handwriting of Kibbie, who is charged with having perpe-

tween the shareholders." Ibid." Dobbins *v.* Etowah Manufacturuing, etc., Company, 75 Ga. 243.

FRAUD, INDICIA OR BADGES OF. "The evidence of fraud in this case is abundant, and the verdict was justified, if not required, by the evidence. Hoffer *v.* Gladden, 75 Ga. 533 (8), 539, and cases there cited.

trated the forgery. The plea of *non est factum* was filed by the directors; and the Court should have presumed nothing—for in such case the law presumes nothing—but should have left the whole question to have been passed upon by the jury. *Printup vs. Mitchell*, 17 *Ga. Rep.* 558. Nor does this view of the law contravene the earlier case of *Scealie vs. Dill*, 2 *Kelly Rep.* 128. This Court, after referring to numerous decisions upon this controverted doctrine, come to the conclusion that the *defendants* would have been entitled to a verdict in that case, had they not failed to put in the plea of *non est factum*. In the case before the Court, that has been done.

I look upon this question, however, as one of minor importance. It will not occur on another trial. Besides, I must say, that to my mind, there is little merit in this plea, as the face of the Minutes show that it was the purpose of the Board of Directors to appoint a *vice-president* and assistant cashier, if not the particular persons whose names were substituted by interlineation in the place of those originally nominated.

The great question in this case is, were these bills signed by the vice-president and assistant cashier binding upon the corporation?

The words of the charter of the Planters' & Mechanics' Bank of Dalton are peculiar in this respect: By section IXth, it is declared that "The bills obligatory and of credit, notes and other contracts whatsoever in behalf of said corporation, shall be binding upon the said company: *Provided* the same be signed by the president and countersigned by the cashier of said corporation." So far, the language is similar to that of the South-Western Bank of Georgia, chartered at the same session, and to like clauses, in most of the bank charters granted in this State, and might be construed to be directory, merely. But the section stops not here, but proceeds: "And the funds of said corporation shall in no case be liable for any contract or engagement whatever, unless the same be signed and countersigned as aforesaid." (*See Pamphlet Acts*, 1853-'4, *p.* 190.)

If bank bills are included in the clause to which this prohibition applies, there would seem to be an end of the question. At the very time when these new appointments were made, and the appointees authorized to fill up bills to an un-

limited amount, there was a regular president and cashier in the discharge of their duties; and the only reason assigned for this violation of the charter was, that money could not be manufactured fast enough; that is the substance of it, and hence, subordinates are constituted, who resided in the State of Illinois, to fill up an impression which was never in the bank, and thus flood the Northwest with an irredeemable currency.

As to the personal liability of the directors, we have nothing to say; but for the protection of the stockholders, and those who hold the genuine bills of the bank, signed by the president and cashier proper, we are not disinclined to see this spurious circulation repudiated.

If it be said, that these bills have got into the hands of innocent holders, our reply is, that they could have protected themselves by looking at the charter, which, in strong phraseology, has exempted the corporation from liability for bills thus signed. The want of power to bind even the corporate funds, in this way, was patent, and whosoever would, might avoid imposition.

It may be suggested that, by the Vth section of the charter, the directors were authorized to appoint such officers and clerks under them as might be deemed necessary for executing the business of the corporation. But a cursory examination of that section will show that it was not intended to clothe the directors with the power to appoint co-ordinate officers to perform functions which could alone be discharged by the president and cashier, and especially during the continuance in office of those incumbents. It is not unusual, we believe, for banks to appoint a president *pro tempore* and an assistant cashier. The former is invested with all the powers of president for the time being; he is, in fact, the president. Assistant cashiers aid the regular cashier in the performance of his onerous duties. But the assistant never countersigns bills. The very mode of signing these bills indicates that a swindle was intended. The *V.* added to the name of the vice-president, and the *Ass.* to that of the cashier are so obscure as not to be noticed by an ordinary person or a casual inspection.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in charging the jury that the alteration made in the order passed by the directors was done at the time that the order was put upon the Minutes, and also in holding that the bills sued on in this case were binding upon the company.