DOBBINS vs. THE ETOWAH MANUFACTURING, etc., COMPANY.

1. Where suit was brought against a manufacturing and mining company on certain notes given by its superintendent, and it was claimed that he had authority to make them under the charter and a letter of attorney from the president, it was the duty of the court to construe both the charter and letter of attorney; and if they did not authorize the making of the notes, the grant of a non-suit was right. Taking these alone, and without proof of other circumstances to which it might be necessary to resort to clear ambiguities or explain doubtful intention, there was nothing for the jury to find.

(a.) The agents of a corporation must observe all the formalities which are required by the charter of the company to be observed in corporate transactions; and if they act in a manner not authorized by the company's charter, their acts will not be binding. Thus where the charter of a company requires a contract of a particular description to be signed by certain officers, or approved in a certain manner, no agent can bind the company by a contract of that description, unless it was executed in the manner prescribed.

(b.) It will not be implied that an agent of a manufacturing and min-

ing company, to whom was given power to do whatever he might consider necessary for the disposal or protection of the property, was thereby authorized to make promissory notes which would bind the company, under the facts of this case.

(*c.*) There being no evidence that the money for which the notes were given was received by the company or used in carrying out the agency of the superintendent, a trial on common counts for money had and received would be useless.

2. It is unnecessary to consider the other questions made, as they could not change the result; but no error appears in the rulings of the court.

January 5, 1886

Corporations. Principal and Agent. Promissory Notes. *Ultra Vires.* Powers. Contracts. Before Judge LUMP-KIN. Bartow Superior Court. January Adjourned Term, 1885.

Reported in the decision.

M. R. STANSELL; McCUTCHEN & SHUMATE; JOHN D. CUN-NINGHAM, for plaintiff in error.

JOHN W. AKIN; JACKSON & KING, for defendant.

HALL, Justice

The plaintiff brought suit, in 1870, returnable to Bartow superior court, against the Etowah Manufacturing and Mining Company, a corporation created by an act of the general assembly of this state, approved March 5th, 1856, and having its principal place of business located in said county of Bartow.

The declaration, as it stood when filed, contained a single count upon three promissory notes, of which the following are copies:

"$1,275.                    ATLANTA, GA., October 22nd, 1866.

Ninety days after date, we promise to pay Wm. T. Quinby, or order, twelve hundred and seventy-five dollars, at the Atlanta National Bank, value received.                    WM. T. QUINBY,
    (Signed)                    Sup't E. M. & M. Co."

"$1,275.                                ATLANTA, GA., October 22nd, 1866.

Ninety days after date, I promise to pay to the order of M. G. Dobbins & Company twelve hundred and seventy-five dollars, at the Atlanta National Bank, value received.

(Signed)                                WM. T. QUINBY.'

"$1,440.                                ATLANTA, GA., October 17th, 1866.

Ninety days after date, I promise to pay to M. G. Dobbins & Company fourteen hundred and forty dollars, at the Atlanta National Bank, value received.                        WM. T. QUINBY,

(Signed)                                Gen'l Sup't E. M. & M. Co."

Indorsed: "WM. T. QUINBY, Gen'l Sup't E. M. & M. Co."

The case remained untried in the court for a number of years, and the pleadings were supposed to be lost, as after search they could not be found, and in 1878, copies were established. These established copies contained the common counts, to-wit, that on the 22nd of January, 1867, defendant was indebted to petitioner twenty-seven hundred and fifteen dollars ($2,715) for so much money had and received to and for defendant's use, and for so much money paid and expended for defendant, and at its special instance and request. At the January term, 1884, the declaration supposed to be lost was found, when it was ascertained that it did not contain these common counts, and was, on motion of plaintiff, then amended by adding them. It was further amended by striking therefrom the note, made payable to the order of M. G. Dobbins & Company, for $1,275, bearing date October 22, 1866, and signed Wm. T. Quinby.

Several defences were set up to this suit, but it is necessary to consider only one of them, viz.: the plea of *non est factum*, which distinctly put in issue the authority of the defendant's agent, Quinby, to make and execute the papers sued on, and to bind it thereby. To shift the burden thus put on him, the plaintiff introduced in evidence the letter of attorney under which Quinby acted, and upon the faith of which the plaintiff advanced the money for which, as he swears, the notes were given. The letter of attorney is as follows ·

"Savannah, January 14th, 1866.

*To W. T. Quinby, Cartersville, Ga.:*

My Dear Sir—Enclosed please find proceedings of a called meeting of the E. M. & M. Co., by which you will see I have been appointed president until Cunningham returns. Since the meeting, I have been suffering dreadfully from a boil under my arm. I cannot write, or I would do so fully. Will as soon as I recover. I wish you to become the general superintendent of Etowah, with full power to do anything that you may consider necessary for the disposal or protection of the property. Please negotiate with the Southern or Southwestern Company about the sand-stone, and get rid of Stocks at once. Please communicate with me at once in the matter of compensation. Something must be done for you. I will write soon.

Very truly yours,

John L. Villalonga, Pres't."

After and before the introduction of this letter, there was a considerable amount of evidence going to show that Quinby acted under this authority, took control of the company's property, and disposed of a portion of the same; that he employed sub-agents, and hired hands, wagons and teams, to enable him to carry the power into effect; and that he sold its property and received its proceeds; but there is no evidence authorizing the inference that any of the money for which it is alleged the notes in controversy were given was used in carrying out this agency. Upon the close of plaintiff's other testimony, he offered the notes in evidence, but they were, on motion, rejected by the court, and the foundation of the action having thus failed, the court, on motion of defendant, awarded a non-suit.

1. The right to maintain this action depends altogether upon the authority of the agent to execute the notes, and to bind the defendant by the contract out of which they grew. The learned counsel, who argued the case with so much skill, learning and ingenuity, for the plaintiff, did not contest the position that no express authority was given by the terms of the power to the agent to make such a contract, but he insisted that the power to do this was necessarily inferable from the terms of the charter as well as from the letter of attorney and the nature of the business the agent had to

v 75·16

transact; that Quinby was the general agent of the company in reference to property committed to his charge, with full power to do anything that he might deem necessary for its disposition or protection ; that without money he could neither have protected nor disposed of it, and from the very nature of the business, a power should be implied to do all things essential to its transaction, and if the raising of money was essential to the execution of the power, and he could not raise it without making and endorsing notes in the name of his principal, then he had the authority to do this, as it was indispensable to the attainment of the main purpose for which he was appointed. He frankly admitted that if this position could not be sustained, he had no case, and that the notes were properly rejected, and without their admission, the non-suit should have been awarded, unless there was evidence that the company received the benefit of the money advanced by the plaintiff, and thus impliedly ratified the transaction, in which event he claimed the right to recover on the money counts in the amended declaration, which he insisted were not subject to a demurrer, as being within the statute of limitations.

To determine whether or not this amendment had relation to the commencement of the action and was thus in time would be a work of supererrogation, since we are satisfied that there was no evidence, in any view that can be taken, which should have sent the case to the jury to be tried on an issue made upon the counts contained in the amendment. There could be nothing practical in the trial of such an issue, unless there had been evidence to show indebtedness on that score; without such evidence, its consideration would have been purely abstract and speculative.

The question, then, with which we have to deal is, whether the agent was authorized by the terms of the defendant's charter, or by his power of attorney, or by the nature of the business he was to transact, to execute the notes in question so as to bind his principal thereby.

That it was the duty of the court to construe both the charter and the letter of attorney, and to determine the extent of power conferred by both and each of them upon the agent, we think is a plain proposition. Taken alone, and without proof of other circumstances to which it was necessary to resort to clear ambiguities or to explain doubtful intention, there was nothing for the jury to find. The question was purely and simply one of law, to which it was the exclusive right and duty of the judge to respond.

It is settled law that the agents of a corporation must observe all the formalities which are required by the charter of the company to be observed in corporate transactions, and if they act in a manner not authorized by the company's charter, their acts will not be binding. Thus, where the charter of the company requires a contract of a particular description to be signed by certain officers or approved in a certain manner, no agent can bind the company by a contract of that description, unless it was exe cuted in the manner prescribed. Morawetz Priv. Corps., §61; Angell & Ames Corp., §291 ; 1 Daniel Neg. Inst., §387, and citations in each of these authorities; *Planters and Mechanics' Bank of Dalton vs. Erwin*, 31 *Ga.*, 376. Such terms are not merely directory—they are mandatory, and even a majority of the corporators are not at liberty to disregard them, since " they constitu te a part of the fundamental agreement between the share-holders." *Ibid.*

In this case, it will not avail the plaintiff that the company held out this party as an agent to bind it in this manner, for he knew, or is presumed to have known, its powers under the charter, and he swore that he had seen the paper under which this agent acted before he would advance money for the company. That he was mistaken as to the authority of the agent and the extent of his pow er to bind his principal, and that he parted with his money under the mistaken belief that he was dealing with the corporation, and that it would thereby and in that manner become bound to him as its creditor, may, perhaps, be prob-

able, but this belief, without more, would not render it liable on these notes, especially where it was shown that it took no part in misleading him.

Section 10 of the company's charter is as follows:

"That said body corporate shall be known by the name of the Etowah Manufacturing and Mining Company, by which name it shall sue and be sued, and do and perform whatsoever it is by this act authorized to do, and all instruments in writing and contracts, under seal or otherwise, and all deeds to and from said body corporate, shall be signed or executed, or signed and executed, through and with such officer or agent as said body corporate shall appoint and direct."

The eighth section of the act of incorporation gave to the body corporate the power, among other things, " to make and execute contracts, promissory notes, bonds and other obligations, under seal and not under seal, and with or without their corporate seal," and declared that all of these should bind the property and interests of the corporation, and also the private property of any member thereof in proportion to the amount of stock or interest held or owned by such member.   Acts 1855–6, p. 452.   From these sections, it appears that the corporation was endowed with the capacity to make such contracts as this, and to manifest them by writing, as by the execution and delivery of promissory notes, but they were restricted as to the person and manner of executing the same.   This record discloses no appointment of an agent or officer empowered by the action of the body corporate to make and execute the contract or promissory notes in question.   The power of attorney, under which the agent acted, appoints him the general superintendent of the company, with full power to do anything which he may consider necessary for the disposal or protection of the company's property.   It is true, he is thereby made the general superintendent of the property, but his power in that relation is expressly limited to certain specified objects only, viz., the disposal and protection of the property.   We could only reach the conclusion by contravening the general rule of a strict compliance with the terms of the power, that he had authority, under this

appointment, to perform an act which would bind, not only the property and interests of the corporation, but also that of its individual members in proportion to the stock or interest that each of them might have in the common effects, by a very broad and liberal, not to say a loose, construction of the terms of this instrument, as well as those of the act of incorporation. .It would be going quite too far to assume, in the face of these facts and the provisions of this charter, that it was the intention of the body corporate to turn over to this agent the full powers with which the body is invested, without at least saving from his control and reserving to itself the management of its affairs, so far as might be necessary, to preserve and protect the private fortunes of its individual members. So far as we are informed, neither the rules of construction that obtain and are universally recognized in such cases, nor the doctrine of implied powers, even where it has been resorted to for the purpose of enabling an agent to execute and carry into effect the object for which his agency was created, have ever been carried to this extent. The power of an agent to make such contracts might be necessarily implied where the corporation carried on a banking business, or dealt in money, loans, discounts, exchange, etc. All this is made manifest by the authorities cited in the briefs of counsel.

2. It is wholly unnecessary to consider and determine other questions made by the record. Whether the testimony rejected was competent or not, or whether it was relevant, is quite immaterial, since its admission could not possibly have changed the result. It is due, however, to the presiding judge to say that we see no reason to impute any error to his judgment in reference to these mat ters. The judgment awarding the non-suit was proper.

Judgment affirmed.