WARD *v.* BARNES, sheriff, *et al.*

1. Although a different rule prevails in equity, in cases at law pending in the courts of this State such costs and expenses of litigation as may be incurred abide the result of the suit, and are chargeable against the party cast therein. In such cases, the property of the defendant cannot, in any event, be appropriated to the payment of such costs or expenses until final judgment against him.

2. Where a mortgage upon personal property is foreclosed, the mortgage execution levied an affidavit of illegality interposed, and the final result is a dismissa of the levy and quashing of the execution; and where, in the meantime, the sheriff levying the execution has incurred a necessary expense for the custody and keeping of the goods levied upon, such expense is not a proper charge against the property of the defendant, and the court has no power to order such goods sold and the proceeds, or any part thereof, applied to the payment of such expense; nor has the sheriff any lien thereon which may be enforced by retention of the property or otherwise.

3. It having been adjudged that the year's support of the petitioner had been lawfully set apart, and no exception by the sheriff having been taken to this judgment, it is conclusive between the parties upon this question; and the widow was entitled to an order directing the delivery of the property to her.

November 26, 1894.

Rule against sheriff. Before Judge LUMPKIN. Fulton superior court. March term, 1894.

JAMES H. GILBERT, for plaintiff.
CALHOUN, KING & SPALDING, for defendant.

ATKINSON, Justice.

Mrs. Ward applied to the superior court for a rule directing the sheriff to deliver to her certain personal property which had been set apart to her for a year's support. The answer of the sheriff averred that the property was held by him under a *fi. fa.* issued under proceedings to foreclose a mortgage on the property in question made by Mrs. Ward's deceased husband; that he had paid expenses of storage of the same, for which he claimed a lien upon the property, and declined to deliver the property until the amount of such claim should be paid. The court below sustained this position of the sheriff and refused to order delivery without payment by Mrs. Ward of the storage fees, which ruling is now assigned as error.

The record shows that in the lifetime of Mr. Ward proceedings were taken in Muscogee superior court to foreclose a chattel mortgage on the goods in question made by Mr. Ward, in which a *fi. fa.* was issued to the sheriff of Fulton county, who took possession of the goods, and that they have since continued in the possession of said sheriff. He caused them to be stored, and at the date of said petition had paid storage fees amounting to upwards of one hundred and twenty dollars. That illegality to the foreclosure was filed on behalf of Mr. Ward, and that the case thereby made being called in its regular order, the levy was dismissed for want of prosecution. That prior to such dismissal, Mr. Ward having died, this plaintiff in error, his widow, took proceedings for a year's support, wherein it appearing that the property in question comprised all the estate of said

deceased, and was not five hundred dollars in value, the same was duly set apart to her.  That after dismissal of the levy, she duly notified the sheriff of her title to said property and of the dismissal of said levy.

No question of fact is involved here; the sole question for determination of this court being whether or not, upon the facts herein stated and as found by the court below, the alleged lien of the sheriff for storage fees is or is not superior to the claim of title of the plaintiff in error by virtue of the assignment to her as a year's support.

Upon this state of facts, the proposition has been pressed upon this court with great earnestness, that the sheriff, being without interest in the litigation, and with respect to the property seized he occupying the position of an involuntary depositary incurring expense in its keeping, is entitled to a lien thereon as bailee, which attaches to the thing bailed without respect to its ownership.  In the first place, we cannot agree to the proposition that the sheriff is an involuntary bailee.  He assumes a highly honorable and greatly responsible trust when he accepts at the hands of the public his official position, and along with its honors and emoluments the law imposes upon him duties and responsibilities of no mean degree.  Among these is the duty to faithfully execute all the processes of the courts which may be placed in his hands, and safely to keep and preserve all property which, by virtue of such process, is committed to his care.  For these good offices the law provides compensation not, in its strict commercial sense, adequate in all cases it is true, but such, supplemented by the honors of public preferment, as is at least satisfactory to him, else he had declined the honor.  He is the depositary chosen of the law, the voluntary repository of its trust, and for the payment of his service the law provides he must look to the party cast in the suit.  In the second

place, we cannot agree that the mere seizure of goods at the suit of a plaintiff who subsequently fails in his action, creates any such right in favor of the officer executing process against the defendant, as would authorize the court to seize and sell a defendant's property in satisfaction either of strict statutory costs or other expenses of litigation. The seizure and sale of the goods of a citizen and the appropriation thereof to the use of another involves the exercise of one of the highest attributes of a sovereign power. To justify such extreme measures there must be something more than an alleged default in a debtor; there must be the decision of a court of competent jurisdiction awarding judgment against the person offending. In a civil suit a defendant must be first convicted either of the tort or breach of contract the basis of the action, before his goods can be appropriated to the use of any person other than himself. It is true that for the purposes of preservation they may be sometimes sold, but the proceeds cannot be applied until final judgment against him. The final judgment alone determines whether he can be deprived of his property; for it is a familiar and deeply cherished principle of our organic law, that a man may not be deprived of life, liberty or property except by due process of law. Due process means the judgment of a court of competent jurisdiction, proceeding according to regular and legally appointed methods, after due notice, against the offending party. To say that a plaintiff, by simply commencing an action and putting in motion the expensive machinery of a court, can commit the estate of a defendant to the payment of such expenses or such costs as may be incurred, without a final judgment finding him in any sense an offender, is confiscation pure and simple, and abhorrent to every principle of justice and right. Aside from these considerations, it has been repeatedly held by this court, that whenever a public

officer, in the rendition of a public service, exacts from a citizen payment for such service, he must be able to justify his demand upon indubitable statutory authority. In the matter of the exaction of costs the law leaves nothing to their discretion, nor does it set up any liens resting upon supposed equities in favor of its ministerial or executive officers.    Whenever it has failed to provide, this failure is equivalent to a denial of compensation. The rule herein stated does not prevail in its strict severity in equity courts.    In the chancery courts in the enforcement of purely equitable rights and in the application of purely equitable remedies, the rule was early adopted that these matters were left largely to the discretion of the chancellor, who, upon equitable principles, might apportion the expense of litigation among the parties in proportion each to his own default.    This rule, however, has never obtained in the common law courts.    This is the first time in this State, in so far as we are advised, where, in the prosecution of ordinary common law remedies, it was sought to set up a species of equitable lien against one who, according to the record, is an unoffending defendant; and such a doctrine we cannot now approve as sound, either in law or reason.    This disposes of the other question in the case; for inasmuch as the officer holding the property has no lien of any character for the service alleged, and inasmuch as the defendant in execution had died pending the litigation, and the plaintiff in error being his widow had caused the property levied upon to be regularly set apart to her as a provision for a year's support, she was lawfully entitled to the possession.    The court, therefore, erred in directing a sale of the property for the payment of the alleged expense of litigation, and erred in refusing to make the rule absolute awarding to her the possession.                          *Judgment reversed.*