## PENINSULAR NAVAL STORES COMPANY *v.* CULBRETH
### *et al.*

"Costs in chancery do not always follow the event of the suit, but are awarded according to the justice of the cause. They rest in the sound discretion of the court, to be exercised upon full view of all the merits and circumstances of the case." In the facts of this case the judgment taxing costs as against the plaintiff in error was within the power of the court, and was not an abuse of discretion; and therefore the judgment was not erroneous.

No. 5011. JULY 13, 1926. REHEARING DENIED SEPTEMBER 23, 1926.

Equitable petition. Before Judge W. E. Thomas. Echols superior court. March 11, 1925.

A manufacturer of naval stores died intestate on March 13, 1922, leaving a widow and several children. He also left an estate consisting of lands, timber leases, stocks of merchandise, and other personal property consisting of live stock, farm machinery and other chattels used in and about his business, and certain shares of corporate stock. At the time of his death, he owed a large debt to a corporation which was his factor,. which debt was secured by deeds covering most of his property. He also owed taxes for the year 1919 and succeeding years until his death, and certain unsecured debts some of which were represented by promissory notes and others by open accounts. The secured and unsecured notes to others than his factor, and income taxes, amounted to $35,-354.43 principal and $9,965.11 interest, and the open accounts amounted to $2,170.41. On June 23, 1922, the widow instituted an equitable suit against the children, seeking the appointment of a receiver and to have the estate administered in the court of equity. On presentation of the petition two temporary receivers were appointed, who took charge of the property. At an interlocutory hearing on July 1, 1922, the temporary receivers were appointed permanent receivers, and they proceeded to administer the estate. On September 12, 1922, the factor corporation filed its intervention in the suit, declaring upon the debts due it and seeking enforcement of the security deeds and mortgages. The debts so declared upon amounted to $72,719.97 principal, besides interest at eight per cent. per annum. The receivers proceeded to operate the business under orders of the court, and from the in-

Costs, 15 C. J. p. 32, n. 45, 47; p. 34, n. 48, 50; p. 38, n. 83, 84.

come thereof paid all taxes upon the estate and certain balances that were due for leases of timber and bonds for title, and reduced the factor's debt by a stated amount. After such payments were made, the receivers negotiated a private sale of the manufacturing business as a going concern and practically all the balance of the estate for the lump sum of $127,500, which was duly reported and approved by the court December 18, 1924, and finally consummated with the purchaser. On January 7, 1925, at an interlocutory hearing upon the merits of the intervention of the factor, the judge entered an order finding that the estate was indebted to the factor in the principal sum of $73,571.69, and $3,144.42 as interest to date, for which amount together with future interest the factor was entitled to a judgment, and that in virtue of the security deeds the factor was entitled to a prior lien over debts that were at that time outstanding, on all the property described in those deeds, and that such property exceeded in value the amount of the secured debt. The order also directed that the receivers pay immediately to the factor the sum of $66,716.11, and that they retain $10,000, being the balance of the amount found due the factor, to await the decision of the court of the factor's liability for a pro rata part of the cost of the administration.

On March 11, 1925, the case was submitted to a jury, and a verdict was returned which found as follows: (1) That the plaintiff was entitled to have the estate administered in equity. (2) That the estate was indebted to the factor a balance to the amount above stated, for which the factor had a special and prior lien as stated in the interlocutory judgment of the court. (3) That a named creditor should have judgment for $1,435 principal, and $398 interest, for which he had a special lien by mortgage; that another named creditor should have judgment for $102.18 principal, and $23.18 interest, for which he should have a lien in virtue of a "retention-title contract;" and that the collector of internal revenue should have an income tax lien for the year 1919, for the principal sum of $345.45 and $14.80 as interest thereon due the United States Government. (4) That designated creditors holding promissory notes executed in the lifetime of the intestate, which in the aggregate amounted to $33,471.80 as principal and $9,528.48 as interest, should have judgments for their respective demands; and that certain other creditors holding open accounts

made during the lifetime of the intestate, amounting to $2,170.41 principal, should have judgments for the respective amounts due them; said several amounts to be paid from the funds in the hands of the receivers, in the order of priority as fixed by law.

Upon this verdict the court rendered a decree substantially as follows: "In this case it appears that at the time the receivers were appointed and took charge of the property and assets of the estate . . said estate was largely indebted, and among other things owed the [factor] approximately $75,000.00, which was secured by certain security deeds covering practically all of the property of the estate. The court is of the opinion that if administration of the estate had been undertaken in the court of ordinary, where the administrator would have been required to sell the property and complete the administration within one year from his appointment and qualification, said property would have brought less than the amount of the secured claims. It appears that the receivers, with funds derived from the operation of the property and by the sanction of the court, [have?] been able to pay the taxes from year to year from 1919 to 1924, inclusive, aggregating a total sum of $12,785.83, and in addition thereto to pay off and discharge large amounts due by the said [intestate] at the time of his death on the purchase-price of lands and leasehold interests acquired by him for use in connection with his naval stores business, but the title to which had not been conveyed to him and by the terms of the contracts of sale was not to be conveyed until full payment was made. The [factor] nevertheless held a lien upon his equities in the said properties, to secure the amount due it. The payments thus made by the receivers, aggregating approximately $15,000.00, enabled the estate to acquire the title to said property, and greatly strengthened the security of said [factor] and inured to its benefit. In addition to all of this, the receivers were enabled to and did pay to said [factor] from funds derived from their operation the sum of $17,909.16 to apply on the amount due it, which payment was made with the sanction of the court and before the property of the estate was brought to sale. It further appears that the [factor] filed its intervention in said cause on September 12th, 1922, by which it sought the foreclosure of its said security deeds and the recovery of the amount due it, with interest, and the relief prayed for has been granted, and the

amount of its claim has been paid, with the exception of $10,-000.00 which the receivers were heretofore directed to withhold pending the decision of the court as to what amount said [factor] should contribute to the cost and expense of administration. Thus said [factor] has been able, without an independent proceeding, to collect its claim, and has used the processes and machinery of the court to accomplish that result. Therefore, and inasmuch as the estate now appears to be insolvent and the administration of it has been beneficial to said [factor], the court is of the opinion that it should be taxed with its just proportion of the cost and expense of administration, which is hereby fixed at the sum of $7,-500.00. And the jury having returned a verdict finding that the plaintiff was and is entitled to have the estate administered in equity as prayed, it is, upon consideration, ordered, adjudged, and decreed as follows: 1. That the plaintiff have and recover the sum of $——— cost for the use of the officers of court, and that said sum be paid by the receivers out of their hands. 2. That the compensation of the attorneys of record for plaintiff and the receivers be and the same is hereby fixed and allowed as follows; (a) The firm of Whitaker & Dukes are allowed the sum of $3500.00 for services rendered and to be rendered by them. (b) E. K. Wilcox is hereby allowed the sum of $3500.00 for services rendered and to be rendered by him. That allowances are in addition to the amount heretofore allowed and paid said attorneys on account, and the receivers are hereby ordered and directed to pay to them said sums, plus $21.90 expenses actually incurred by them, the amount of said expenses to be equally divided between them. 3. That the compensation of E. P. Rose, one of the receivers who has not heretofore been allowed or paid any amount for his services, be and the same is hereby fixed at $5000.00, and the receivers are hereby directed to pay to him said amount out of the funds in their hands. 4. That the additional compensation of A. M. Culbreth, one of the receivers, who has heretofore received for his services a monthly salary as active managing receiver, be and the same is fixed at $1500.00, which is hereby allowed, and the receivers are directed to pay to him said amount out of the funds in their hands. 5. That, after the payment of the cost and expenses of administration, fixed and allowed as above set out, the receivers be and they are hereby ordered and directed to pay to

the [factor] or its attorney of record, the sum of two thousand and five hundred dollars, in satisfaction of the balance due it, after deducting seven thousand, five hundred ($7500.00) dollars taxed against it as aforesaid, and that they also pay the secured claims of the First National Bank of Jasper, Florida, J. J. Joyner, and J. T. Rose, Collector of Internal Revenue, in full, as found by the verdict of the jury. 6. That, after the payment of all of the above sums, the receivers be and they are hereby directed to retain and hold in their hands as a special fund, subject to the further order of the court, the sum of $16,000.00, for the following purposes, to wit: To await the final disposition of the intervention of the Bank of Jasper, and to satisfy such liability as may be established in certain other matters still pending and undisposed of. 7. That such balance as may then remain in the hands of the receivers be paid by them to the various intervenors who declared on promissory notes, and who are named in the sixth paragraph of the verdict of the jury, pro rata in satisfaction of the principal and interest recovered by them, so far as said balance will extend. 8. This decree is rendered without prejudice to the Bank of Jasper, whose intervention is still pending; and the court hereby expressly retains jurisdiction of this cause and hereby reserves the right to pass such further orders and decrees from time to time as may be necessary to dispose of all pending matters, and to make a final distribution of the fund and wind up said estate."

. To this decree the factor excepted and assigned error on the same as being contrary to law, upon the following grounds: "1. That under this decree the [factor] is debarred from even sharing in the said remaining fund of sixteen thousand dollars ($16,-000.00), but other creditors who are unsecured are permitted to have the whole of said funds applied to their unsecured debts. 2. Because the [factor] had deeds to secure debt on the greater part of the lands from the sale of which the funds in court were derived, and said lands covered by such deeds to secure debt brought more than sufficient to pay its claim in full, together with the costs and expenses of the receivership. 3. Because there is no authority of law for a court which has, by appointment of receivers, taken charge of property on which an intervenor has a deed to secure debt, to tax such intervenor with the costs of the receivership or

any part thereof, where the property on which such deeds to secure debt are outstanding brings more than enough to pay the secured debt in full. 4. Because the fact that the court had already appointed receivers and had taken charge of said property under receivership proceedings made it necessary for said [factor], the holder of the secured debt aforesaid, to intervene in said cause in order to obtain its rights; and there is no authority of law to tax it with the costs or any part thereof, where the property covered by its deeds to secured debt brought more than the amount of such debt. 5. Because the decree of the court in said cause was contrary to law, in this: that the same taxes a creditor holding a deed to secure debt with a part of the expenses of administration of said estate, and leaves in the hands of the receivers, after such taxing, an amount which, in the orderly proceeding of the case, will be distributed among unsecured creditors who have no lien and no priority. 6. Because the effect of said order will be to disregard the law of the State of Georgia as set forth in code section 4000 of Park's Code of Georgia of 1914, in that the secured claim of said [factor] will be postponed to open accounts and unsecured debts which, under the law, are not entitled to any payment whatever until all secured claims have been paid. 7. Because said judgment was not rendered in the exercise of a sound discretion; the [factor] having done nothing which was not absolutely essential to the protection of its rights; and to tax it with costs and expenses in said cause, while not taxing the other secured creditors of said estate, was a discrimination against said [factor], which is not authorized by law. 8. Because said judgment taxing the [factor] with seventy-five hundred dollars ($7500.00) was illegal in this: That there were no pleadings to authorize said holding as against the [factor], and the judgment of the court so taxing the [factor] the sum of seventy-five hundred dollars ($7500.00) was made on the oral motion of counsel for the unsecured creditors, made at the special term on January 7, 1925, and not further insisted on at the March term when said order was passed by the court. 9. Said [factor] says that the court erred in entering said judgment, for the reasons aforesaid."

*Travis & Travis*, for plaintiff in error.

*E. K. Wilcox, Whitaker & Dukes, Cranford & Cranford, R. G.*

*Dickerson Jr., Patterson & Copeland, J. F. McCracken, J. B. Odum, G. E. Simpson, J. J. Murray, Murray & Knight, Taylor & Spurlin, C. L. Smith, House & Goree, Reynolds & Rogers,* and *Franklin & Langdale,* contra.

ATKINSON, J. 1. In equity practice as a general rule "it is the province of the judge . . to determine upon whom the costs shall fall." Civil Code (1910), § 5423. In the early case of *Pearce* v. *Chastain,* 3 *Ga.* 226, 230 (46 Am. D. 423), it was said: "Costs in chancery do not always follow the event of the suit, but are awarded according to the justice of the cause. They rest in the sound discretion of the court, to be exercised upon full view of all the merits and circumstances of the case." This is a good statement of the rule, and it has been consistently recognized. *Lowe* v. *Byrd,* 148 *Ga.* 388 (96 S. E. 1001), and cit. The rule excludes arbitrary action by the judge, and an award taxing costs will be arbitrary and amount to an abuse of discretion where the award is contrary to law and equity and justice. *Hamilton* v. *DuPre,* 103 *Ga.* 795 (30 S. E. 248); *Lowry Banking Co.* v. *Atlanta Piano Co.,* 95 *Ga.* 146 (22 S. E. 42); *Macon Savings Bank* v. *Carter,* 107 *Ga.* 778 (33 S. E. 679). The facts in *Hamilton* v. *DuPre,* supra, were that Mrs. Hamilton instituted an equitable action to enjoin a constable from selling property under a distress warrant in favor of Mrs. DuPre. Mrs. DuPre and the constable, defendants in the equity suit, by their answer in the nature of a cross-petition sought the appointment of a receiver. The issues involved in the distraint proceeding were drawn into the equity case, and on the trial a verdict was returned in favor of Mrs. Hamilton, the plaintiff in the equity case; and it was thereupon adjudged that she was not liable to Mrs. DuPre for any rent, but nevertheless the judge taxed her with the costs incurred in the equity case.

The facts in *Lowry Banking Co.* v. *Atlanta Piano Co.,* supra, sufficiently appear in the opinion, which is quoted in full: "The Lowry Banking Company, as trustee for certain creditors of the Atlanta Pianoforte. Manufacturing Company, held a deed of trust to all the property of this corporation to secure the payment of the debts described therein. A bill was filed by this trustee for the purpose of foreclosing the trust deed held by it, and the appointment of a receiver was prayed against the defendant. Subsequent

to the filing of this bill, the Atlanta Piano Company (the previous name of the corporation having been changed by an amendment to its charter) executed to Mrs. Holliday a mortgage upon all its property to secure the payment of a certain debt therein described; and she proceeding to foreclose by summary statutory process her mortgage upon the property described, the plaintiff by an amendment to its bill brought her in and made her a party defendant thereto, and prayed that she be enjoined from selling the mortgaged property, upon the ground that such proceedings might tend to waste the trust estate and thereby imperil its security. Certain other common-law executions having been issued against the defendant, these were likewise purchased by Mrs. Holliday; and plaintiff prayed that as to these executions she likewise be enjoined. By its amendment the plaintiff alleged that the mortgage to Mrs. Holliday was executed to delay and defraud creditors and to defeat it in the assertion of its lien under and by virtue of the trust deed. Answers were filed by the respondents. The issue formed, after stubborn and prolonged contest, was finally decided in favor of the plaintiff, the Lowry Banking Company as trustee, in so far as it set up the lien of its trust deed, though reducing the debt to some extent because of alleged usury; but was found against the Lowry Banking Company and in favor of Mrs. Holliday, in so far as it recognized and established the validity of her mortgage lien, though reducing somewhat the amount claimed to be due thereon. The decree rendered awarding to the plaintiff the amount of its debt, principal, interest, and cost, as found by the verdict, was fully discharged, leaving a balance in the hands of the receiver to be applied to the extinguishment of the junior lien of Mrs. Holliday. Counsel for the plaintiff, the Lowry Banking Company, filed a special petition, praying that of the sum so left in the hands of the court after the extinguishment of their client's claim, the court should set apart and award to them as counsel for the plaintiff in the case the sum of twenty-five hundred dollars, upon the idea that the defendant Mrs. Holliday, the holder of the junior mortgage, had taken an interest under the bill, had been stubbornly litigious, and had exposed the plaintiff to unnecessary expense in the assertion of its rights. This petition was demurred to in the court below, upon the ground that the same was insuffi-

cient in law, and as affording no ground upon which the court would be authorized to grant the relief prayed for. This demurrer was sustained, and the prayer of the petition refused. Let us see whether the holder of this junior mortgage was liable, out of the fund apportioned to the payment of her debt, to contribute in any manner to the payment of counsel fees for the plaintiff. Aside from our statutory regulations upon the subject, under the rules of equity pleading, parties having claims are admitted as intervenors upon their own application as parties plaintiff, only upon condition that they aver a willingness to bear their portion of the expenses of litigation. This is the condition upon which they are admitted as parties upon their own prayer, and, being so admitted, whether such intervenor be the holder of a junior or senior lien, courts of equity have power to tax him with his proportionate share of the expenses of litigation. This is the principle upon which in the administration of an estate by a court of equity the expenses of litigation are awarded in the nature of costs as being superior to the liens of parties at interest. The divesting of the lien, however, and an appropriation of any portion of the money which should be applied to the payment thereof to any other purpose, when made upon the voluntary application of the party holding the lien, is one thing; and the appropriation of such money to such other purpose as against one who is a party defendant and who is proceeding entirely outside the scope of the plaintiff's bill in the assertion of his rights, is entirely a different thing. In the one case, through the plaintiff, he invokes the remedial processes of the court and thereby commits himself to the purposes of the proceeding and likewise to the payment of his proportion of the expenses of litigation. In the other case, his position is one of antagonism to the purposes of the bill, and, though he may take indirectly a benefit thereunder, there is no reason why he should be made liable for the payment of expenses. That a defendant in the assertion of ordinary legal remedies is stubborn and litigious in the assertion of his right, affords no reason why the courts as against him should award counsel fees to his adversary, where he proceeds in good faith and has a substantial right in the premises. The very issue upon which the plaintiff contends that this defendant was stubbornly litigious was submitted to a jury. The issue of fraud in the execution of the

mortgage was distinctly made, and that issue was found against the plaintiff. The jury found that the defendant Mrs. Holliday had a bona fide existing lien upon the property in question, that she had a bona fide subsisting right; but even if this were not true, the plaintiff could not recover against the defendant attorney's fees by way of damages upon the ground that she was stubbornly litigious, for the reason that there was no privity of contract between the plaintiff and the defendant; the defendant had violated no contract made with the plaintiff, was under no duty to submit to its demand; and it is only in that class of cases, under our code, that damages are allowed as against a defendant who is stubbornly litigious. This plaintiff's right to have its attorneys' fees allowed out of this fund must rest, then, upon some supposed equitable right resulting from the fact that the defendant in some manner took a benefit under the final decree rendered in the case. If she had been a voluntary party by intervention to the bill and received affirmative assistance at the hands of the plaintiff, the plaintiff's contention might be well founded. In this case whatever benefit this defendant may have taken under the bill was due to no assistance rendered her by the plaintiff. It is a general rule of law that every man is to pay his own lawyer, that every litigant pays his own counsel; and to justify a court in appropriating the funds of one person to the payment of the fees of another, the party affirming the correctness of the proposition ought to be required to show by uncontrovertible authority the power of the court so to do. To allow attorneys representing unsecured claims to file a creditors' bill and make a mortgage creditor a party defendant to the bill, and, upon marshaling the assets of the estate, to take away from the mortgage creditor a large proportion of the money which should be appropriated to the extinguishment of his lien, and apply it to the payment of counsel fees of moving creditors, would be nothing short of judicial confiscation. It would be an effort, under the forms of law, to divest a mortgagee of property of which the court could have no legal power to deprive him. The same rule would apply to the holder of a senior mortgage. He can not be entitled to more than to have his entire debt extinguished. As against a defendant who has not made himself a voluntary party to the bill, it can not be said to be either equitable or just that his money be appropriated to the fees of counsel

for moving creditors; and we think the court committed no error in sustaining the demurrer and dismissing the petition for the allowance of fees."

The facts in *Macon Savings Bank* v. *Carter,* supra, sufficiently appear in the opinion, which is quoted in full: "The Macon Savings Bank and others were judgment creditors of Mayer & Crine, who owned a stock of merchandise in the City of Albany and a plantation in Dougherty County. The judgments held by these creditors were the oldest and highest liens upon the property belonging to this partnership. The Loomis & Hart Manufacturing Company held a mortgage covering the stock of merchandise, junior in date to the judgments above mentioned. Executions which had issued upon these judgments and upon a foreclosure of the mortgage were levied upon the stock of goods. After this, Jacob Lorch and other unsecured creditors of Mayer & Crine filed a creditors' petition, upon which a restraining order was granted and a temporary receiver appointed to take charge both of the goods and the farm whereon Mayer & Crine had been conducting farming operations. At the interlocutory hearing, the restraining order was dissolved and the receiver discharged. During the time the receiver was acting, he made advances to the amount of more than $600 'to said farm,' under the order of court appointing him. After the dissolution of the restraining order, the merchandise was sold by the sheriff under the mortgage execution in favor of the Loomis & Hart Manufacturing Company. The fund thus realized was in amount insufficient to satisfy in full the common-law judgments. The plaintiffs therein instituted a rule against the sheriff, to which proceeding the receiver was made a party. Upon the hearing thereof, the only contested issue was whether the money should be paid to the receiver upon his claim for advances, or to the plaintiffs in the common-law executions. It was not shown that the receiver had incurred any expense in keeping the goods or that he rendered any valuable services with respect to the same. The court directed the sheriff to pay the money to the receiver, and the other parties at interest excepted. This decision was clearly erroneous. There is no principle, either legal or equitable, of which we are aware, authorizing this fund to be thus taken from the parties holding the executions to which the same was subject. As to them, there was no necessity whatever for a re-

ceiver. Though parties to the creditors' petition, manifestly they were not voluntary parties thereto. The receiver did nothing for their benefit. As remarked above, it does not appear he rendered any valuable services with respect to the goods; and so far as the advances made by him are concerned, all the money thus realized was expended in carrying on the farming operations of Mayer & Crine. The court's order did not bind him to advance this money, for he could have renounced the appointment. He should therefore, as to the making of the advances, be treated as a mere volunteer who acted at his peril. It was incumbent upon him, at the time he was discharged from the receivership, to invoke from the court whatever order may have been necessary and proper to provide for his reimbursement out of the crops to the making of which these advances contributed. Certainly he had no just claim to compensation out of the proceeds of the stock of merchandise, on which the plaintiffs had valid liens of the highest dignity and which was not even converted into cash through his instrumentality, having been sold by the sheriff under lawful process. It is true that under section 4850 of the Civil Code [of 1895], the judge has a discretion in equity cases in determining upon whom the costs shall fall. He has, however, 'no arbitrary power in this respect, but must exercise a sound discretion in deciding by whom the costs shall be paid.' *Hamilton* v. *DuPre,* 103 *Ga.* 795. The principle upon which the case of *Bradford* v. *Cooledge,* Ibid. 753, was decided is also applicable to the facts of the case at bar. Indeed, the impropriety of allowing the receiver's claim to compensation for the money he advanced is much more apparent than was the error committed in the case last cited."

In *Garmany* v. *Lawton,* 124 *Ga.* 876, 883 (53 S. E. 669, 110 Am. St. R. 207), it was said: "If the mortgagee comes in and makes himself a party complainant, and sets forth the fact of his mortgage, and voluntarily litigates with the other creditors, he thereby recognizes the necessity for the petition and ratifies the filing of it; and thus becomes chargeable with his proportion of the expenses of the suit. *Lowry Banking Co.* v. *Abbott,* 87 *Ga.* 134; *Lewis* v. *Edwards,* 92 *Ga.* 533; *Central Trust Co.* v. *Thurman,* 94 *Ga.* 735; *Bradford* v. *Cooledge,* 103 *Ga.* 753, 761."

In the instant case the suit was an equitable suit instituted by the widow of the debtor against the other heirs at law, seeking

the administration of the estate in equity. Shortly after the receiver was appointed the factor upon its own intervention was allowed to become a party plaintiff for the purpose of enforcing the security which it held and collecting its debt. The property of the estate was valuable as a whole and as a going concern, and it was no doubt deemed to the best interest of all the parties that the business should be continued and that the property should be sold at private sale by order of the court. The business was continued by the receiver for more than two years after the factor had intervened as a party plaintiff, and by means thereof taxes were paid by the receiver and the purchase-money for timber leases and lands, which were superior in dignity to the security held by the factor, were paid, thus to that extent benefiting the factor; and further from the income derived from operating the business the receiver paid the factor a large sum on the debt due to him by the estate. All of this fully appears from the recitals in the judgment of the court, which is set out in the statement of facts. The plaintiff in error did not procure a brief of the evidence, and in the circumstances the case should be decided on the basis of the statement of facts made by the judge. On the facts so stated the judge held that the factor had voluntarily intervened and employed the processes of the court in the case, and had been afforded substantial advantages by being allowed to become a party to the suit, and that it was equitable and just that the factor should pay its pro rata share in the costs of the receivership proceedings, and accordingly the cost was taxed and apportioned in such manner as that the amounts allowed to all creditors should contribute to the costs. The amount paid over to the factor fully discharged its debt, with the exception that it was required to pay therefrom the amount of the costs apportioned to it; and the amount so allowed the factor exceeded the amounts due to all other creditors to such an extent as that the amount of costs taxed against the factor was not unreasonably disproportioned to the amount taxed against the claims of other creditors. The estate was insolvent; so it was necessary to pay the costs out of the assets that were being administered. In the circumstances the apportionment was reasonable and just and within the sound discretion of the court, under application of the rule in such cases made and provided, and the judgment was not erroneous for any of the reasons assigned in the

bill of exceptions. From what has been said it is apparent that the facts of the case differ from those in *Hamilton* v. *DuPre, Lowry Banking Co.* v. *Atlanta Piano Co.,* and *Macon Savings Bank* v. *Carter,* supra; and that in the case under consideration the factor derived such benefits from its voluntary intervention in the equity suit for administration and receivership as would, under the reasoning in the opinions in those decisions, require a different result from the results required in those cases. The cases of *Reynolds* v. *Howard,* 113 *Ga.* 349 (38 S. E. 849), and *Ward* v. *Barnes,* 95 *Ga.* 103 (22 S. E. 133), cited by plaintiff in error, were not in equity and are not applicable to the present case.

    *Judgment affirmed. All the Justices concur.*

RUSSELL, C. J., concurs in the result, but not in all that is said in the opinion.